IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SADIS & GOLDBERG, LLP,<br><br>                  Plaintiff,<br><br>vs.<br><br>AKSHITA BANERJEE AND SUMANTA BANERJEE,<br><br>                  Defendants. | CIVIL ACTION NO. 19-1682 |

## COMPLAINT

Plaintiff Sadis & Goldberg, LLP ("Plaintiff" or "Sadis") hereby sues Defendants Akshita Banerjee and Sumanta Banerjee and alleges as follows:

### PRELIMINARY STATEMENT

1. Since 2008, Defendant Sumanta Banerjee has owed Sadis in excess of $379,000, plus interest, for legal services provided in New York. Sadis filed two lawsuits, in 2013 and February of 2014, to recover the funds owed. Sadis recently discovered that in 2013 and 2014 Defendant Sumanta Banerjee fraudulently transferred large sums to his wife Akshita Banerjee in Pennsylvania in order to prevent Sadis, Mr. Banerjee's creditor, from being able to collect on his debt. Mrs. Banerjee then spent these funds on her house and businesses. These transfers to Mrs. Banerjee—and her subsequent transfers of the funds to others—were fraudulent under both New York and Pennsylvania law. These fraudulent transfers must be set aside and/or Mrs. Banerjee's property attached and sold to provide the funds necessary to satisfy Mr. Banerjee's debt.

{00384915.DOCX; 1}

## PARTIES

2.  Plaintiff Sadis & Goldberg, LLP is a law firm and Limited Liability Partnership organized under Delaware law, authorized to do business in the state of New York, and whose principal place of business is 551 5th Avenue, 21st Floor, New York, New York 10176.

3.  All of the partners of Sadis are citizens of New York or New Jersey. None reside in Pennsylvania.

4.  Defendant Akshita Banerjee is a citizen of Pennsylvania, with a residence of 1514 Cook School Rd., Pittsburgh, PA 15241.

5.  Defendant Sumanta Banerjee is a citizen of Pennsylvania, with a residence of 1514 Cook School Rd., Pittsburgh, PA 15241.

## JURISDICTION AND VENUE

6.  The amount in controversy, without interest and costs, exceeds $75,000 pursuant to 28 U.S.C. § 1332(a).

7.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties. Plaintiff is a citizen of New York and New Jersey by virtue of the fact that all of its partners are citizens of these states and the Defendants are citizens of Pennsylvania.

8.  Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (2) because Defendants are both residents in the Western District of Pennsylvania and the fraudulent transfers at issue occurred in this district.

## FACTUAL BACKGROUND

I. **BANERJEE USES SADIS' LEGAL SERVICES BUT DOES NOT PAY HIS LEGAL BILLS**

9. Plaintiff is a law firm that *inter alia* represents parties in matters of litigation, mediation, and other forms of alternative dispute resolution.

10. Mr. Banerjee consulted with Sadis with regards to retaining Sadis' services to represent him in *Tuckerbrook Alternative Investments, LP v. Sumanta Banerjee and John Doe*, Docket No. 08-10636 (PBS) ("Tuckerbrook action"), in the United States District Court for the District of Massachusetts. Tuckerbrook had engaged Mr. Banerjee as a portfolio manager.

11. Mr. Banerjee was terminated from Tuckerbrook in March 2008. Tuckerbrook alleged that Banerjee violated his employment agreement by attempting to create a competing fund and tortiously interfered with Tuckerbrook's business relations when Mr. Banerjee asked a Tuckerbrook employee to leave the entity to start the new fund. Tuckerbrook also alleged that Mr. Banerjee took confidential information belonging to Tuckerbrook upon the termination of Mr. Banerjee's employment.

12. Mr. Banerjee executed a retainer agreement, engaging the Firm to defend him in the action and to counterclaim that Tuckerbrook breached an employment agreement for failing to pay Mr. Banerjee what he was owed in management fees, and other equitable considerations.

13. Over the course of the representation, Sadis spent over 1,500 hours reviewing documents, preparing employment agreements, engaging in motion practice, attending mediation, and working on a settlement agreement on behalf of Mr. Banerjee. Throughout this time, Sadis consistently kept Mr. Banerjee apprised of its progress by participating in conferences and phone calls with him.

14. On or about July 21, 2008, a partner with Sadis, Douglas Hirsch, sent Mr. Banerjee a letter regarding his then-outstanding legal bill in the amount of $249,222.13, the payment plan the Firm and Mr. Banerjee agreed to in negotiations relating to the outstanding amount, and the Firm's ongoing representation of Mr. Banerjee (the "July Agreement").

15. The July Agreement was made in New York and governed by New York law.

16. Under the July Agreement, Sadis agreed to deduct $5,000 from the outstanding amount and potential additional discounts if Mr. Banerjee paid his bill before certain dates. Mr. Banerjee acknowledged that, as of July 17, 2008, he owed $244,222.13.

17. Under the July Agreement, Sadis also agreed to continue to "make a good faith effort" to remain as Mr. Banerjee's counsel. Mr. Banerjee also agreed—among other things—that he was satisfied with the Firm's legal services to date and had requested the Firm continue representing him as counsel.

18. After executing the July Agreement, Sadis continued to perform legal work for Mr. Banerjee, who despite consistent representations that he would pay, failed to pay the outstanding invoices—with the exception of one $25,000 payment—and instead retained the benefits of Plaintiff's legal services.

19. Sadis last performed legal services for Mr. Banerjee in June of 2009. His final bill, dated July 1, 2009, was for $379,652.37.

20. Mr. Banerjee is a debtor for the $379,652.37, plus interest, and Sadis is his creditor.

21. Despite numerous requests Mr. Banerjee never paid this bill, thereby breaching the July Agreement as well as the earlier retainer agreement.

22. In the 2000s, Mr. Banerjee transferred almost all of his assets to India—gifting them to his parents—in order to make them out of reach of creditors. By 2008, most of Mr. Banerjee's assets had been transferred to India. And Banerjee continued to transfer his assets to India in 2009 and 2010.

23. In 2009, Mr. Banerjee transferred his home in Connecticut to a limited liability company, ZBAC, LLC to further make it difficult for creditors to collect. In 2012, he officially withdrew from ZBAC, LLC, leaving the ownership of the house in control of his wife, Akshita Banerjee. However, Mr. Banerjee continued to use the house.

## II. SADIS SUES BANERJEE IN THE SOUTHERN DISTRICT OF NEW YORK

24. On October 18, 2013, Sadis filed a Summons and Complaint against Sumanta Banerjee in the Southern District of New York ("SDNY") under Docket Number 13-cv-7355. The Complaint sought to collect the $379,652 owed, plus interest.

25. Sadis retained a process server to serve Mr. Banerjee at his Pittsburgh home. The process server served Banerjee's wife, Akshita Banerjee, who initially accepted service of the summons and complaint on November 5, 2013. Akshita Banerjee confirmed her identity as the defendant's wife, and was served in the presence of a police officer. Mrs. Banerjee was therefore aware of Sadis' claim against her husband as of November 5, 2013—at the latest.

26. However, in a sudden about-face, Mrs. Banerjee later wrote a letter to Sadis (which she also filed with the district court) in which she claimed that Sumanta Banerjee did not reside in the United States, but rather, was "a permanent resident of India and has been so for over four years" and was "an overseas citizen of India."

27. Relying on Akshita Banerjee's representation—which Sadis later discovered was false—Sadis attempted to serve Mr. Banerjee at the Indian address provided by Mrs. Banerjee through India's Central Authority in accordance with the Hague Service Convention. Once

{00384915.DOCX; 1} 5

again, the complaint was initially accepted by a family member, this time Mr. Banerjee's mother. However, she too returned the papers saying that Sumanta Banerjee did not reside at her address.

28. After a dismissal without prejudice, Sadis re-filed its action in the SDNY on February 13, 2014, and the district court approved alternative service on Mr. Banerjee by email.

29. On February 6, 2015 the SDNY granted Sadis' motion for a default judgment and a judgment of $383,448.90 was entered on April 28, 2015.

30. A year later, on April 27, 2016, Banerjee filed a motion to set aside the default judgment. Banerjee argued that he lived in India and was not properly served under the Hague Service Convention. In support of his motion, Banerjee represented to the SDNY that he did not have any property in the United States, did not earn any income in the United States, and did not pay any State or local taxes.

31. The SDNY denied Mr. Banerjee's motion, and he appealed to the United States Court of Appeals for the Second Circuit. On appeal, Mr. Banerjee advanced a new argument, claiming that he was a U.S. citizen domiciled in India in February of 2014 and therefore outside of the SDNY's subject matter jurisdiction.

32. On March 22, 2018, the Second Circuit upheld the service on Mr. Banerjee and the validity of the default judgment, if there was subject matter jurisdiction. But the Second Circuit remanded to the district court to determine whether Mr. Banerjee was domiciled in Pennsylvania or India at the time the second Complaint was filed on February 13, 2014.

33. Sadis then sought and received discovery on the issue of Mr. Banerjee's domicile.

### III. SADIS DISCOVERS THAT BANERJEE FRAUDULENTLY TRANSFERRED FUNDS TO HIS WIFE, AKSHITA BANERJEE

34. Through third-party discovery related to Mr. Banerjee's domicile, Sadis discovered that, contrary to Banerjee's representations before the SDNY, the State of Pennsylvania believed that Mr. Banerjee had earned $431,610 in 2014.

35. The Pennsylvania Department of Revenue ("PA Dept. of Revenue") sent Mr. Banerjee a notice that he had failed to pay income taxes on the $431,610 he earned in 2014 and therefore owed Pennsylvania $13,250 in taxes for that year. A true and correct copy of this notice is attached hereto as **Exhibit A**.

36. On February 14, 2019, Sadis took Sumanta Banerjee's deposition. At his deposition, Mr. Banerjee testified that the $431,610 was money he earned from the sale of stocks and bonds in a fund called Common Fund Distressed Partners II.

37. Mr. Banerjee further testified that the $431,610 was sent to him as a check in 2014 and he endorsed the check over to his wife, Akshita Banerjee. Mr. Banerjee received no consideration from his wife for this transfer. This transfer from Mr. Banerjee to his wife, occurring well after Mr. Banerjee was a debtor to Sadis, and after Mr. Banerjee had been sued by Sadis in the SDNY, was a fraudulent transfer under New York and Pennsylvania law.

38. On March 29, 2019, Sadis took Akshita Banerjee's deposition. At her deposition, Mrs. Banerjee testified that she received the $431,610 from her husband in 2014 and that "a lot of it went to my home building" and that she used a lot of the money "to get things done in the home, cash to the builder." Although Mr. Banerjee lives in the home, 1514 Cook School Rd., Pittsburgh, PA 15241, the property is held in the name of Akshita Banerjee and her father—not Sumanta Banerjee.

39. At the time that Mrs. Banerjee used the $431,610 for her home, 1514 Cook School Rd., Pittsburgh, PA 15241, she was well aware that Mr. Banerjee owed the vast majority of that money to Sadis because she accepted Sadis' original SDNY Complaint in November of 2013. She also knew that Mr. Banerjee had claimed not to have any property or income in the United States. Mrs. Banerjee's subsequent spending of any part of the $431,610 on her house was a further fraudulent transfer under New York and Pennsylvania law.

40. In 2014 and 2015, Mrs. Banerjee created and funded multiple businesses including, SSA Capital Advisors, LLC, Harvester Energy, LLC, and SSA Capital Partners I, LLC. On information and belief, Mrs. Banerjee used portions of the $431,610 to fund these businesses. These further transfers from Mrs. Banerjee to these businesses are also fraudulent transfers.

41. Similarly, Sadis discovered that in 2017 the PA Dept. of Revenue sent Mr. Banerjee a notice that he had failed to pay income taxes on $108,346 he earned in 2013. A true and correct copy of this notice is attached hereto as **Exhibit B**.

42. As with the $431,610 received by Mr. Banerjee, the $108,346 was money he earned from the sale of stocks and bonds in a fund called Common Fund Distressed Partners I in 2013.

43. And as with the $431,610 payment, Mr. Banerjee received the $108,346 in a check which he endorsed over to his wife, Akshita Banerjee, in 2013. Mr. Banerjee received no consideration from his wife for this transfer. This transfer from Mr. Banerjee to his wife, occurring well after Mr. Banerjee was a debtor to Sadis, and when Banerjee was claiming to not have any other assets in the United States, was a fraudulent transfer under New York and Pennsylvania law.

44. In discovery, the Defendants also revealed that from the beginning of 2014 through the present Mr. Banerjee had transferred hundreds of thousands of dollars from his Indian accounts to his wife through her use of his Indian debit and credit cards. The transfers of these funds were also fraudulent transfers under New York and Pennsylvania law.

45. On information and belief, all of these funds were also used by Akshita Banerjee to fund her many businesses and ventures.

## CAUSES OF ACTION

### COUNT I
### FRAUDULENT TRANSFER UNDER THE PENNSYLVANIA UNIFORM FRAUDULENT TRANSFER ACT, 12 PA.C.S. § 5104

46. Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs as if fully set forth herein.

47. Defendant Sumanta Banerjee is a debtor to Sadis as defined under the Pennsylvania Uniform Fraudulent Transfer Act (the "PA Act") and has been such a debtor since 2008.

48. Plaintiff Sadis is a creditor of Mr. Banerjee as defined under the PA Act and has been such a creditor since 2008.

49. By 2008, Mr. Banerjee had transferred most of his assets to India in order to make them out of reach of creditors. Mr. Banerjee continued to transfer his assets to India in 2009 and 2010.

50. By the end of 2012, Mr. Banerjee had very few assets left in his name in the United States.

51. At some point in 2013, Mr. Banerjee received $108,346 in a payout from an investment in a fund in the United States. Despite his debt to Sadis, Mr. Banerjee immediately

transferred the $108,346 to his wife. Mr. Banerjee received no consideration from his wife for this transfer.

52. At some point in 2014, Mr. Banerjee received $431,610 in a payout from an investment in a fund in the United States. Despite his debt to Sadis, Mr. Banerjee immediately transferred the $431,610 to his wife. Mr. Banerjee received no consideration from his wife for this transfer.

53. The transfer of the $431,610 occurred after Mr. Banerjee had been sued for the debt.

54. Both Mr. and Mrs. Banerjee were fully aware of the debt Mr. Banerjee owed to Sadis at the times of the transfers. Mr. Banerjee transferred the funds, and Mrs. Banerjee accepted the funds, with actual intent to prevent those funds from being collected by Sadis and other creditors of Mr. Banerjee.

55. Moreover, from 2014 through the present, Mr. Banerjee regularly arranged the transfer of funds from India directly to Mrs. Banerjee in order to prevent them from being collected upon by Mr. Banerjee's creditors.

56. Plaintiff, Sadis, did not discover the existence of these transfers until Defendants' depositions in February and March of 2019 in connection with another matter.

57. These transfers were all fraudulent transfers under 12 Pa.C.S. § 5104(a) and therefore voidable.

58. As a result of Defendants' actions, Sadis is entitled to a voidance of the transfers, an injunction against further transfers of Mrs. Banerjee's assets and real property, including the house at 1514 Cook School Rd., Pittsburgh, PA 15241, and the Cook School house and Mrs.

Banerjee's business interests should be attached to be sold to pay the debt, including interest, owed to Sadis.

## COUNT II
## FRAUDULENT TRANSFER UNDER NEW YORK DEBTOR AND CREDITOR LAW

59. Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs as if fully set forth herein.

60. Defendant Sumanta Banerjee owes a debt to Sadis as defined under Section 270 of New York's Debtor and Creditor Law and has been a debtor to Sadis since 2008.

61. Plaintiff Sadis is a creditor of Mr. Banerjee as defined under Section 270 of New York's Debtor and Creditor Law and has been such a creditor since 2008.

62. Defendant's debt to Plaintiff was incurred in New York pursuant to the July Agreement and the legal work Plaintiff performed for Defendant in New York.

63. By 2008, Mr. Banerjee had transferred most of his assets to India in order to make them out of reach of creditors. Mr. Banerjee continued to transfer his assets to India in 2009 and 2010.

64. By the end of 2012, Mr. Banerjee had very few assets left in his name in the United States.

65. At some point in 2013, Mr. Banerjee received $108,346 in a payout from an investment in a fund in the United States. Despite his debt to Sadis, Mr. Banerjee immediately transferred the $108,346 to his wife. Mr. Banerjee did not receive fair consideration from his wife for this transfer.

66. At some point in 2014, Mr. Banerjee received $431,610 in a payout from an investment in a fund in the United States. Despite his debt to Sadis, Mr. Banerjee immediately

transferred the $431,610 to his wife. Mr. Banerjee did not receive fair consideration from his wife for this transfer.

67. The transfer of the $431,610 occurred after Mr. Banerjee had been sued for the debt.

68. Both Mr. and Mrs. Banerjee were fully aware of the debt Mr. Banerjee owed to Sadis at the times of the transfers. Mr. Banerjee transferred the funds, and Mrs. Banerjee accepted the funds, with actual intent to prevent those funds from being collected by Sadis and other creditors of Mr. Banerjee.

69. Moreover, from 2014 through the present Mr. Banerjee regularly transferred funds from India directly to Mrs. Banerjee in order to prevent them from being collected upon by Mr. Banerjee's creditors.

70. Plaintiff, Sadis, did not discover the existence of these transfers until Defendants' depositions in February and March of 2019 in connection with another matter.

71. These transfers were fraudulent under Sections 273, 273-a, and 276 of New York's Debtor and Creditor Law.

72. As a result of Defendants' actions, Sadis is entitled to a voidance of the transfers, an injunction against further transfers of Mrs. Banerjee's assets and real property, including the house at 1514 Cook School Rd., Pittsburgh, PA 15241, attorney fees, and the Cook School house and Mrs. Banerjee's business interests should be attached to be sold to pay the debt, including interest, owed to Sadis.

## REMEDIES

WHEREFORE Plaintiff respectfully demands voidance of Defendant Sumanta Banerjee's transfers to Defendant Akshita Banerjee and any subsequent transfers of Akshita Banerjee, an attachment of—or levy on—Defendant Akshita Banerjee's house and businesses,

an injunction against future dispositions by either Defendant of the any assets, attorney fees, interest, an appointment of a receiver to take charge of Defendant Akshita Banerjee's house and businesses until the debt can be repaid, and any other relief the Court may deem just and proper.


Filed:  December 31, 2019                    /s/ Katelin J. Montgomery
                                                                            Katelin J. Montgomery
                                                                            Pa.I.D. #322698

                                                                            MEYER, UNKOVIC & SCOTT LLP
                                                                            535 Smithfield Street, Suite 1300
                                                                            Pittsburgh, PA 15222
                                                                            412-456-2800

                                                                            *Counsel for Plaintiff Sadis & Goldberg, LLP*