IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA (PITTSBURGH)

| | |
|---|---|
| SADIS & GOLDBERG, LLP,<br><br>      Plaintiff,<br><br>      v.<br><br>AKSHITA BANERJEE and SUMANTA BANERJEE,<br><br>      Defendants. | Case No. 2:19-CV-01682-AJS<br><br><br>**MOTION TO SET ASIDE DEFAULT JUDGMENT**<br><br><br>Filed on behalf of Defendants, Akshita Banerjee and Sumanta Banerjee<br><br><br>Counsel of Record for this Party:<br><br>Beverly A. Block, Esquire<br>P.A. I.D. # 93406<br>Marcie J. Solomon, Esquire<br>P.A. I.D. # 324902<br><br>Block & Associates, LLC<br>6425 Living Place, Suite 200<br>Pittsburgh, PA 15206<br>Tel: (412) 450-6021<br>Fax: (412) 450-6024<br>block@blockandassociatespgh.com<br>msolomon@blockandassociatespgh.com |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA (PITTSBURGH)

| | |
|---|---|
| SADIS & GOLDBERG, LLP,<br><br>Plaintiff,<br><br>v.<br><br>AKSHITA BANERJEE and SUMANTA BANERJEE,<br><br>Defendants. | Case No. 2:19-CV-01682-AJS |

## DEFENDANTS' MOTION TO SET ASIDE DEFAULT JUDGMENT

NOW COME Defendants, Akshita Banerjee and Sumanta Banerjee, by and through their undersigned counsel, and the law firm of Block and Associates, LLC., and file the within Motion to Set Aside Default Judgment entered against them at CM/ECF #13 for good cause pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, stating as follows:

**A.     PARTIES:**

1.      Plaintiff, Sadis & Goldberg, LLP, is a law firm and Limited Liability Partnership with a principal place of business at 551 5th Avenue, 21st Floor, New York, New York 10176 ("Plaintiff" or "Sadis").

2.      Defendant, Sumanta Banerjee, is an adult individual who resides at 1514 Cook School Rd., Pittsburgh, PA 15241 ("Mr. Banerjee").

3.      Defendant, Akshita Banerjee, is an adult individual who currently resides at 1514 Cook School Rd., Pittsburgh, PA 15241, and is married to Mr. Banerjee ("Ms. Banerjee" and collectively, together with Mr. Banerjee, "Defendants").

**B.**   **FACTUAL BACKGROUND PROCEDURAL HISTORY**:

   **(i)**   **Commencement of Litigation in the Southern District of New York**:

4.      This action arises out of a long history of litigation between Sadis and Defendant, Sumanta Banerjee.

5.      In 2008, Mr. Banerjee engaged Sadis to represent him in a dispute with his then business partner, for a business in which Mr. Banerjee held a 50% ownership interest as General Partner.

6.      Mr. Banerjee and Sadis entered into a dispute over the legal bills generated by that matter, and ultimately, Sadis filed multiple lawsuits against Mr. Banerjee in the United District Court for the Southern District of New York, most recently, including a lawsuit filed in 2014. (hereinafter, the "SDNY Litigation")

7.      As of this filing, the SDNY Litigation remains pending, with the case having been remanded by the Second Circuit Court of Appeals to the United District Court for the Southern District of New York, with the parties presently engaged in evidentiary matters related to ascertaining Mr. Banerjee's domicile during the initiation of the SDNY Litigation. (*See, generally,* Docket Report from SDNY Litigation, last accessed on July 15, 2020, a true and correct copy of which is attached hereto as "**Exhibit A**").

   **(ii)**   **Procedural History of the Instant Litigation:**

8.      During the pendency of the SDNY Litigation, Plaintiff filed a Complaint in this Court against Mr. and Ms. Banerjee alleging, *inter alia,* that Mr. and Ms. Banerjee made certain fraudulent transfers of funds between themselves in 2013 and 2014 (prior to any knowledge of any lawsuit from Sadis), which, according to Sadis, permitted it to file separate claims against Mr.

Banerjee in a new jurisdiction and to bring claims against Ms. Banerjee, with whom Sadis never had contractual privity.

9.      It is believed, and therefore averred, that Sadis improperly used confidential information that was subject to a Confidentiality Stipulation, gleaned during evidentiary proceedings in the SDNY Litigation, in order to initiate the instant litigation (hereinafter, the "WDPA Litigation").

10.     Despite indication to the contrary in the docket in this case, neither Mr. nor Ms. Banerjee received proper service of the Complaint.

11.     Indeed, on the date set forth in the Summons in this case at CM/ECF #5 and CM/ECF #6, hand-delivery of the Complaint was not provided to Ms. Banerjee; indeed, Ms. Banerjee was not at her residence at 7:16 a.m. on January 10, 2020.

12.     As will be further elucidated should this Court set aside the default judgment, between January 8, 2020 through January 18 or 19, 2020, Ms. Banerjee was staying with her parents, A. J. and Jyoti Gandhi, at their home in Canonsburg, Pennsylvania.

13.     At no time between January 8, 2020 through January 18 or 19, 2020, did Ms. Banerjee return to her residence at 1514 Cook School Road.

14.     Likewise, from January 8, 2020 through February 1, 2020, Mr. Banerjee was working in India, and never received notice of the WDPA Litigation.

15.     For the avoidance of doubt, the Banerjee's now residence at 1514 Cook School Road was vacant from January 7, 2020 through January 18 or 19, 2020, and therefore, a United States Marshall could not have physically served the Summons on Ms. Banerjee, or any one for that matter, on January 10, 2020.

16.     Ms. Banerjee returned to her residence after her stay with her parents in Canonsburg, on January 18 or 19, 2020; upon returning to her home, Ms. Banerjee never saw or received the Summons or Complaint or any other paperwork related to this action (either in her mailbox or anywhere at/near the residence or via e-mail).[1]

17.     Having never received any notice of the WDPA Litigation, Defendants were unaware of, and therefore never responded to, the Complaint in this action.

18.     Puzzlingly, on January 31, 2020, Sadis filed with this Court a Joint Stipulation for Extension of Time ("Joint Stipulation"), in which to respond to the Complaint, representing that Sadis had an agreement with the Banerjee's as to said extension.  (*See* CM/ECF #8).

19.     There never was any such stipulation, agreement, or discussion among Sadis and the Banerjees with respect to an extension of the deadline to respond to the Complaint, as the Banerjees were never served with the Complaint in the first instance.

20.     In any event, this Court denied the Joint Stipulation, and on February 18, 2020, Sadis requested an entry for Default Judgment against both Defendants for failure to respond.  (*See* CM/ECF #12).

21.     The Clerk of this Court entered Default Judgment against Defendants and in favor of Sadis on February 20, 2020.  (*See* CM/ECF #13).

22.     Significantly, from February 1 through March 4, 2020, Mr. and Ms. Banerjee were both in frequent contact with Ben Hutman, New York counsel for Sadis, who had entered his appearance *Pro Hac Vice* in this litigation; indeed, the Banerjee's and Mr. Hutman had appeared together for an in-person status conference in the pending SDNY Litigation.

---

[1]     To be clear, while Sadis' filings in this matter include Certificates of Service that indicate that the filings in this case were mailed to the Banerjee's the Banerjee's never received any materials related to this case at their residence at 1514 Cook School Road.

23.     At no time during Mr. Hutman's meeting with the Banerjee's did Mr. Hutman mention or otherwise inquire as to the fact that the Banerjee's had failed to appear, or in any way contested, the WDPA Litigation.

**(iii)        Transfer of This Court's Judgment to Allegheny County:**

24.     On or around April 15, 2020, Sadis filed a Praecipe to Transfer the Judgment entered in the WDPA Litigation to the Court of Common Pleas of Allegheny County, Pennsylvania ("Praecipe to Transfer"), with that matter having been assigned Case No. GD-20-005103.

25.     The Banerjee's were never provided notice of the Praecipe to Transfer filed in Allegheny County.

26.     Thereafter, on June 3, 2020, Sadis filed a Writ of Execution to initiate garnishment proceedings, with Writs of Garnishment having been served on various financial institutions, including, Citizens Bank, PNC Bank, Fidelity Investments, and a limited partnership with whom Mrs Banerjee is involved, SSA Capital Advisors ("SSA").

27.     Likewise, as set forth in the docket of that case, as of the date of this filing, the Banerjee's were never provided notice of the Writ of Execution or the Writs of Garnishment upon their filing with the Court of Common Pleas.

28.     Defendants first and only knowledge of the Praecipe to Transfer, Writ of Execution and Writs of Garnishment entered in Allegheny County came when the Banerjee's minor son noticed a notation about a withdrawal from his PNC bank account on June 15, 2020. Ben Hutman, Esquire, of Sadis & Goldberg, LLP, later confirmed the existence of the action in the Western District of Pennsylvania.

29.     During all timeframes set forth in this Motion, the SDNY Litigation filed by Sadis against Mr. Banerjee, which forms the alleged basis of the same judgment sought in the WDPA Litigation, remains pending, without any final resolution on the merits of that case.

**C.     ARGUMENT**

**(i)     Brief Introduction.**

30.     Federal Rule of Civil Procedure 55(c) provides that relief from the entry of a default may be granted for "good cause shown."  Fed.R.Civ.P. 55(c).

31.     A decision to set aside the entry of default pursuant to Fed.R.Civ.P. 55(c) is left primarily to the discretion of the district court.  *U.S. v. $55,518.05 is U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984).

32.     As made clear by the Third Circuit Court of Appeals, a district court must consider the following three factors in exercising its discretion after entry of default: (1) whether setting aside the default would prejudice the plaintiff, (2) whether defendant has asserted a meritorious defense and (3) whether the default was the result of the defendant's culpable conduct.  *United States v $55,518.05*, 728 F.2d at 194-95.

33.     The Third Circuit Court of Appeals has emphasized that in applying the three factor test, courts should "not favor defaults, and that in a close case doubts should be resolved in favor of setting aside the default and obtaining a decision on the merits." *Farnese v. Banasco*, 687 F.2d 761, 764 (3d Cir. 1982).

**(ii)     Plaintiff Will Not be Prejudiced by Setting Aside the Default Judgment.**

34.     The Third Circuit requires a district court to consider whether setting aside a default judgment would prejudice the Plaintiff.  *Farnese*, 687 F.2d at 764.

35.     As stated above, the parties herein are currently engaged in the still pending SDNY Litigation, which is centered on whether Sadis is owed a sum of money from Mr. Banerjee for unpaid legal fees.

36.     During the pendency of the SDNY Litigation, Sadis attempted to collect on the same alleged debt in the Western District of Pennsylvania through claims of fraud brought under various state laws against Mr. Banerjee, and adding his wife even though Ms. Banajee was never in contractual privity with Sadis.

37.     Sadis will not be prejudiced by setting aside the Default Judgment in this case, as they have had, and continue to have, an opportunity to fully litigate all related factual issues in the still-pending SDNY Litigation.

**(iii)    <u>Defendants Have a Meritorious Defense to the Complaint.</u>**

38.     All facts and argument contained in this section and otherwise herein are being proffered at this time solely to demonstrate viable defenses as is required by the Third Circuit to set aside a Default Judgment.  Defendants are not waiving the defense of personal jurisdiction or any other meritorious defense.  Defendants reserve the right to supplement the facts and argument on these defenses following the Court's decision on the within Motion.

**(a)     Sadis Failed to Properly Serve the Banerjees and the Matter Ought to be Dismissed Pursuant to F.R.Civ.P. 12(b)(5).**

39.     Pursuant to F.R.Civ.P 12(b)(5), the court may dismiss a case for "insufficiency of service of process."  F.R.Civ.P 12 (b)(5).

40.     As set forth in Paragraphs 9 - 15 above, and despite an indication in the docket to the contrary, proper service was not made with respect to either Defendant as required by F.R.Civ.P. 4(e).

8

41.     The default judgment at issue here ought to be set aside as according to the Third

Circuit Court of Appeals, the entry of a default judgment must be set aside as void "where there

has been no proper service of the complaint ..." *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.* 765

F.2d 14 (3d Cir. 1985).

      **(b)**      **Any Filing in the Western District of Pennsylvania Based on the Same Facts and Issues as the Pending SDNY Litigation is Premature And Should be Barred In The Interest of Sound Judicial Administration.**

42.     As stated above, the parties remain engaged in the still-pending SDNY Litigation.

43.     Despite the ongoing SDNY Litigation, Plaintiff has initiated parallel litigation in

the Western District of Pennsylvania.

44.     While the Complaint filed in the WDPA Litigation reframes the fee dispute as a

question of fraud, it does not change the fact that the underlying issue remains whether or not Mr.

Banjeree owes Sadis some amount of legal fees, and this question is still pending in the SDNY

Litigation.

45.     While there has not yet been a final determination on the merits in the SDNY

Litigation post-appeal, a final determination in that matter will necessarily impact a determination

in the WDPA Litigation, as the facts and issues needed to substantively litigate the Complaint filed

in the WDPA Litigation are the same facts required to make a final determination in the SDNY

Litigation, as these represent two different attempts by Sadis to collect the very same alleged debt.

46.     It is against the interests of sound judicial administration to allow the two cases to

proceed concurrently, as they have both been presented to federal courts of equal rank.  *See*

*Zokaites v. Land-Cellular Corp*, 424 F.Supp. 2d 824, 838 (W.D.Pa. 2006).

47.     In fact, if the Default Judgment were to stand in the WDPA Litigation, and Mr. Banerjee ultimately prevails in the SDNY litigation, the duplicative litigation could result in conflicting judgments.

48.     At the same time, should Sadis prevail on the merits in the pending SDNY Litigation, allowing the default resulting from the WDPA Litigation to stand could place Sadis in the position of being able to collect on the same debt twice, certainly an inequitable result.

49.     Based on the foregoing, any action in the Western District of Pennsylvania ought to be dismissed or stayed until the SDNY Litigation is complete.

**(c)      Plaintiff's Allegations are Based on Information Obtained by Defendant Subject to a Confidentiality Order and Used Improperly.**

50.     Sadis learned of the transfers between the Banerjees during the now pending SDNY Litigation. During evidentiary proceedings as part of that case, Sadis subpoenaed records from H&R Block and Fidelity Investments which were produced via a confidentiality agreement entered into in the Southern District of New York.

51.     It would be inequitable to allow Sadis to bring new claims based on patently confidential documents.

**(d)      Plaintiff is Time-Barred From Bringing a Claim Under PAUFTA As the Claims are Outside of the Applicable Statute of Limitations.**

52.     Section 5109 of PAUFTA provides that the relevant statute of limitations with respect to intentionally fraudulent transfers or with respect to constructive fraud is four (4) years after the transfer was made or the obligation incurred.

53.     In this case, Sadis alleges that the supposed fraudulent transfers occurred in 2013 and "at some point in 2014."

54.     Yet, Sadis filed its Complaint on December 31, 2019, more than a year after the expiration of the applicable four-year statute of limitations.

**(e)    Plaintiff's Allegations regarding Violation of the Pennsylvania Uniform Fraudulent Transfer Act and the Equivalent New York Statute Fail as There was No Relevant Fraud and the Matter Ought to be Dismissed Pursuant to F.R.Civ.P. 12(b)(6).**

55.     The Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S. § 5101 *et seq.* ("PAUFTA" or the "Act"), provides a statutory remedy to creditors where a debtor has acted to hinder his creditors.

56.     While Mr. Banerjee may be a "debtor" as defined by PAUFTA, Ms. Banerjee had no privity of contract with Sadis and has not entered into any agreement to pay Sadis, and does not meet the definition of "debtor" under PAUFTA.

57.     The "general rule" as stated in PAUFTA is that a transfer by debtor is voidable as to a creditor if: (i) the debtor made the transfer with actional intent to hinder, delay or defraud any creditor; or (ii) without receiving a reasonably equivalent value in exchange for the transfer and the debtor was engaged in a transaction for which his remaining assets were unreasonably small in relation to the transaction or the debtor should have reasonably believed the debtor would incur debts beyond his ability to pay. 12 Pa.C.S. § 5109.

58.     Here, Sadis alleges that Mr. Banerjee made transfers of $108,345.00 in 2013, and $431,610.00 at some point in 2014, and that these transfers were made in violation of the PAUFTA as they were made after Mr. Banerjee had been sued for a debt and were intended to hinder Sadis' collection activities or were made without receiving a reasonably equivalent value in exchange.

59.     In fact, in 2013 and 2014, Mr. Banerjee did not have notice of the SDNY Litigation, the very question that is currently subject to evidentiary hearings on remand in the SDNY Litigation.

60.     Secondly, the transfer was not made without consideration as the evidence in this case will reveal that said transfers were made pursuant to marital agreement entered into in 2012 between Mr. and Ms. Banerjee that predated Sadis' suit in its entirety.

61.     Specifically, the evidence will show that the Banerjees began having marital problems in 2012 while living in India and the transfers identified by Sadis were made pursuant to an agreement entered into by Mr. and Ms. Banerjee to provide for Ms. Banerjee and their three children when they returned to live in Pittsburgh, while Mr. Banerjee remained in India.

62.     Pursuant to PAUFTA, a transfer that might otherwise be voidable is not voidable against a person that took in good faith.

63.     To the extent that PAUFTA might apply to Ms. Banerjee despite the fact that she is not a "debtor" under the Act, Ms. Banerjee certainly received said transfers in "good faith" as payments related solely to a marital dispute in 2012 and to support her then three minor children at that time.

**(iv)     <u>The Default Was Not the Result of Culpable Conduct on the Part of the Banerjees.</u>**

64.     In determining whether to set aside a default judgment the court must examine the defendant's "culpable conduct," as evidenced by the defendant's "willfulness," or "bad faith." *See Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653 (3d Cir. 1982); *Gross v Stereo Component Systems, Inc.*, 700 F.2d 120 (3d Cir. 1983).

65.     As discussed in Paragraphs 9 -15 above, neither Mr. nor Ms. Banerjee were served with the Complaint.

66.     Indeed, the Banerjees' first notice of the WDPA Litigation came as a result of learning about the garnishment action now pending in the Allegheny County Court of Common Pleas.

67.     In fact, the SDNY Litigation was ongoing during the pendency of this WDPA Litigation, and despite multiple interactions between counsel for Sadis and the Banerjees as part of the SDNY Litigation, not once did Sadis' counsel make mention or reference to the WDPA Litigation and the Banerjee's noticeable absence from and failure to respond to same.

68.     Sadis' failure to make proper service disobliges the Defendants from being required to make any sort of response.

69.     Any failure to respond to a Complaint, of which each Defendant had no notice, cannot be considered willful or in bad faith.

WHEREFORE, Defendants, Akshita Banerjee and Sumanta Banerjee respectfully request that this Honorable Court grant the within Motion and Set Aside the Default Judgment for good cause pending the resolution of the related proceedings in the United States Federal District Court of the  Southern District of New York.

Dated:  July 15, 2020                      Respectfully submitted,


                                           */s/ Beverly A. Block*
                                           Beverly A. Block, Esquire
                                           Pa. I.D. #93406
                                           Marcie J. Solomon, Esquire
                                           Pa. I.D. #324902
                                           BLOCK & ASSOCIATES, LLC
                                           6425 Living Place, Suite 200
                                           Pittsburgh, PA 15206
                                           412-450-6021
                                           (412) 459-6024 (fax)

                                           *Attorneys for Defendants.*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA (PITTSBURGH)

| | |
|---|---|
| SADIS & GOLDBERG, LLP,<br><br>Plaintiff,<br><br>v.<br><br>AKSHITA BANERJEE and SUMANTA BANERJEE,<br><br><br>Defendants. | Case No. 2:19-CV-01682-AJS |

## **ORDER OF COURT**

AND NOW, this ____ day of _____, 2020, upon consideration of the Motion to Set Aside Default Judgment, it is hereby ORDERED, ADJUDGED AND DECREED that the motion GRANTED and that the Default Judgment entered against Akshita Banjeree and Sumanta Banerjee is set aside and all further proceedings in this matter are stayed pending resolution of the pending litigation in the Southern District of New York.

BY THE COURT:


_____J.

## **Exhibit A**

[Docket Report for Case #: 1:14-cv-00913-LTS-OTW in the Southern District of New York]

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Motion to Set Aside Default Judgment was served upon opposing counsel using the Court's CM/ECF system and United States Mail, Certified mail delivery, postage prepaid, this 15th day of July, addressed as follows:

Sadis & Goldberg, LLP
Katelin J. Montgomery, Esquire
Kate E. McCarthy, Esquire
Meyer, Unkovic & Scott LLP
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222

Ben Hutman
Sadis & Goldber, LLP
551 Fifth Avenue
Floor 21
New York, NY 10176


*/s/ Beverly A. Block*
Beverly A. Block