## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SADIS & GOLDBERG, LLP,** | **CIVIL ACTION NO. 2:19-cv-01682 (AJS)** |
| **Plaintiff,** | |
| **vs.** | |
| **AKSHITA BANERJEE AND SUMANTA BANERJEE,** | |
| **Defendants.** | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO SET ASIDE DEFAULT JUDGMENT

Katelin J. Montgomery
MEYER, UNKOVIC & SCOTT LLP
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222
412-456-2530

Ben Hutman
SADIS & GOLDBERG, LLP
551 Fifth Avenue, 21st Floor
New York, New York 10176
212-573-6675

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................................... III

PRELIMINARY STATEMENT ...................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................... 2

I.      THE BANEREJEES WERE PROPERLY SERVED AND COMMUNICATED
        WITH PLAINTIFF'S COUNSEL ABOUT THIS ACTION IN JANUARY 2020 ........... 2

II.     THE HISTORY OF THE SDNY ACTION AND SADIS' DISCOVERY OF THE
        FRAUDULENT TRANSFERS ...................................................................................... 4

III.    SUMANTA'S HISTORY OF HIDING OR TRANSFERRING ASSETS,
        DODGING SERVICE, AND SEEKING TO VACATE DEFAULT
        JUDGMENTS ................................................................................................................ 6

        A.      Sumanta's History of Hiding Assets and Stated Intention to Continue to do so ........... 6

        B.      Sumanta's Long History of Dodging Service and Trying to Vacate Defaults .............. 7

ARGUMENT ................................................................................................................................... 9

I.      SADIS PROPERLY SERVED DEFENDANTS, THEIR DEFAULT WAS
        WILLFUL AND THEY HAVE NOT ARTICULATED ANY OTHER BASIS
        FOR VACATING THE DEFAULT UNDER FRCP 60(B) ................................................ 9

II.     THE BANERJEES DO NOT HAVE A MERITORIOUS DEFENSE ............................ 12

        A.      The First Filed Rule is Not a Defense and Inapplicable Because this Action is
                Already Completed and There is No Potential of Conflict. ......................................... 12

        B.      Plaintiff's Allegations are Not Based on Confidential Information and Use of
                Confidential Information is not a Defense. ................................................................. 13

        C.      Plaintiff's PAUFTA Claim is Not Time-Barred Because it Was Brought
                Within a Year of Reasonable Discovery of the Fraudulent Transfers. ....................... 13

        D.      The Complaint Clearly States Claims Under PAUFTA and the New York
                DCL. .......................................................................................................................... 14

III.    VACATING THE DEFAULT INCREASES THE RISK THAT THE
        BANERJEES WILL FURTHER HIDE OR TRANSFER THEIR ASSETS. ................... 15

CONCLUSION ............................................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Budget Blinds, Inc. v. White*,
536 F.3d 244 (3d Cir. 2008)...................................................................................1, 9, 11

*E.E.O.C. v. Univ. of Pennsylvania*,
850 F.2d 969 (3d Cir. 1988), *aff'd,* 493 U.S. 182 (1990) ......................................12

*FROF, Inc. v. Harris*,
695 F. Supp. 827 (E.D. Pa. 1988) ...........................................................................10

*Gonzalez v. Crosby*,
545 U.S. 524 (2005)..................................................................................................11

*Hritz v. Woma Corp.*,
732 F.2d 1178 (3d Cir. 1984)..............................................................................11, 12

*Hunt Optics & Imaging, Inc. v. Greene*,
No. CIV.A. 10-503, 2010 WL 3303792 (W.D. Pa. Aug. 19, 2010) .......................10

*Johnson v. United States*,
375 F. App'x 273 (3d Cir. 2010) .............................................................................11

*JPMorgan Chase Bank, N.A. v. Pandolfelli*,
No. ADV 09-02068, 2010 WL 3745123 (Bankr. D.N.J. Sept. 14, 2010)...............15

*Pennsylvania Land Holdings Corp. v. Mason*,
No. 2:06CV1150, 2008 WL 3246868 (W.D. Pa. Aug. 6, 2008)..............................10

*Sadis & Goldberg, LLP v. Banerjee*,
No. 14-cv-913 (LTS) (SDNY) ..............................................................................1, 3

*Sunoco, Inc. (R & M) v. Glob. Recycling & Demolition, LLC*,
300 F.R.D. 253 (E.D. Pa. 2014)...............................................................................11

*Tuckerbrook Alt. Invs., LP, v. Banerjee*,
No. 09-cv-11672 (WGY) (D. Mass.) .....................................................................1, 8

*Tuckerbrook Alt. Invs., LP, v. Banerjee*,
No. 12-cv-11643 (GAO) (D. Mass.) ......................................................................1, 8

**Statutes, Rules and Other Authorities**

12 Pa.C.S. § 5104(a)(1) ........................................................................................13

12 Pa.C.S. § 5109(1) ...........................................................................................13

FRCP 4(e)(2)(A)&(B) ..........................................................................................10

FRCP 4(f)(3) ..........................................................................................................5

FRCP 55(c) .............................................................................................................9

FRCP 59(b) .............................................................................................................9

FRCP 60(b) ............................................................................................1, 9, 10, 11

PA Uniform Fraudulent Transfer Act (PAUFTA) ...........................................13, 14

## PRELIMINARY STATEMENT

The Defendants' claim that they were not served and did not know about this action until June 15, 2020 is a lie—they are trying to mislead the Court to set aside a willful default. On January 10, 2020, a process server served Defendant Akshita ("Akshita") and Sumanta ("Sumanta") Banerjee (together "Defendants" or the "Banerjees") by handing the initiating papers to Akshita at the Banerjees' home. McCarthy Aff. ¶ 6-7, Ex. A-C. On the day Defendants' Answer was due, January 31, 2020, Akshita called Plaintiff's counsel and left a recorded voicemail asking to speak "about action 19-1682"—*the case number of this action*. McCarthy Aff. ¶ 9. That same day, Plaintiff's counsel spoke with Akshita *two more times* about this Action and ultimately agreed to stipulate to a 30-day extension which was filed with this Court. *Id.* ¶¶ 10-12.

The Banerjees behavior here—pretending they were not served—is part of pattern. In at least three prior lawsuits, Sumanta has tried this same strategy:

- In *Tuckerbrook Alt. Invs., LP, v. Banerjee*, No. 09-cv-11672 (WGY) (D. Mass.), Sumanta repeatedly opposed a default by claiming he was never served. Ex. 2 ¶¶ 4-12; Ex. 3 at 1.

- In *Tuckerbrook Alt. Invs., LP, v. Banerjee*, No. 12-cv-11643 (GAO) (D. Mass.), Sumanta claimed not to have been served despite the complaint delivered to his house. Ex. 4 at 4-5, 7-9; Ex. 5 at 1-2.

- In *Sadis & Goldberg, LLP v. Banerjee*, No. 14-cv-913 (LTS) (SDNY), Sumanta moved to vacate his default by claiming he was never served and did not have notice. Ex. 6 at 2, 8-10.

The Banerjees' willfully defaulted and should not be permitted to waste Plaintiff's resources again.

In addition to being factually false, Defendants' Motion fails to set forth the basis for relief under FRCP 60(b)(1)-(5) or the "extraordinary circumstances" that would otherwise be necessary. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251, 255 (3d Cir. 2008). And Defendants fail to present a meritorious defense to Plaintiff's fraudulent transfer claims. Setting aside the Default Judgment will only give Defendants additional time to further fraudulently transfer and hide assets. Plaintiff should not be so prejudiced. The Motion must be denied.

## STATEMENT OF FACTS

### I.   THE BANEREJEES WERE PROPERLY SERVED AND COMMUNICATED WITH PLAINTIFF'S COUNSEL ABOUT THIS ACTION IN JANUARY 2020

This action was initially filed by Plaintiff Sadis & Goldberg, LLP ("Sadis" or "Plaintiff") on December 31, 2019 and the Summons was issued that same day.  Dkt. Nos. 1-2.  On January 10, 2020, Anthony DeMasi ("DeMasi"), of Allegheny Process Servers, LLC served both Banerjees by placing copies of the Summons and Complaint into Akshita's hands at the Banerjees' home. McCarthy Aff. ¶ 6.  Akshita accepted service on behalf of herself and her husband, Sumanta.  *Id.* That same day, DeMasi emailed Sadis' counsel and informed them that he had served both Banerjees.  *Id.*, Ex. A.  DeMasi provided Plaintiff with proofs of service that he executed and Plaintiff filed them with the Court on January 14, 2020.  *Id.* ¶ 7, Ex. B & C.  In the proof of service on Akshita, DeMasi testifies that "personally served the summons" on Akshita "by placing into her hands at 1514 Cook School Rd., Pittsburgh, PA 15241 on 1-10-20 at 7:16 A.M."  *Id.*, Ex. B at 2.  And DeMasi testifies that he served Sumanta by leaving the summons "at the individual's residence or usual place of abode with Akshita Banerjee relationship wife & co-resident at 1514 Cook School Rd." also "on 1-10-20 @ 7:16 A.M."  *Id.*, Ex. C at 2.

January 31, 2020 was set as the date Defendants' Answer was due.  Ex. 7 at 1.[1]  That afternoon, at 1 p.m., Akshita called Plaintiff's counsel in Pittsburgh, Meyer, Unkovic & Scott, and left a voicemail stating "my name is Akshita Banerjee. I'm calling about action 19-1682" and asking to be called back.[2]  McCarthy Aff. ¶ 9; Ex. D.  This voice message, referencing the case

---

[1] All numbered exhibits are to the Declaration of Ben Hutman in Support of Plaintiff's Opposition to Defendants' Motion to Set Aside Default Judgment ("Hutman Decl.") and are designated throughout this brief as simply "Ex. _."

[2] Plaintiff would be happy to provide a copy of the voicemail to the Court.

number of this Action, is conclusive proof that the Banerjees are lying to the Court—Akshita knew about the lawsuit and the Answer due date.

Moreover, Akshita spoke with Plaintiff's counsel *two more times* on January 31, 2020 and the parties agreed to stipulate to a 30-day extension so Defendants could secure counsel and file their Answer.  McCarthy Aff. ¶¶ 11-12.  Thus, Defendants are lying when they claim (Motion ¶¶ 10-11, 16, 28) they were never served and did not know of this action until June 15, 2020.

Plaintiff filed a Joint Stipulation for Defendants extension of time to answer—an action that would be absurd if Defendants had not made such a request—but the stipulation was rejected by the Court on February 3, 2020.  Ex. 7, Dkt. Nos. 9-10.  That same day, Plaintiff emailed and sent a letter to the Banerjees informing them of the Court's order and explaining that, as a courtesy, Sadis would not request entry of a default judgment until February 13, 2020.  McCarthy Aff. ¶ 14, Exs. E & F.   Ultimately, Sadis gave the Banerjees even more time—waiting until February 18 to file a Request for Entry of Default and Default Judgment ("Requests for Default").  Ex. 7, Dkt. No. 12.  Sadis sent the Banerjees copies of the Requests for Default by email and FedEx.  Ex. 8; McCarthy Aff. ¶ 15, Ex. G.

Indeed, contrary to Defendants claim (Motion ¶¶ 22-23) that Sadis' New York counsel, Ben Hutman, did not mention to them their failure to appear in this action, Mr. Hutman emailed Defendants the copies of the Requests for Default on February 18, 2020.[3]  Ex. 8.  This was on the same day that Mr. Hutman emailed Defendants regarding the Southern District of New York action, *Sadis & Goldberg, LLP v. Banerjee*, No. 14-cv-913 (LTS)(OTW) (the "SDNY Action").  Ex. 9.  Mr. Hutman also emailed copies of the Clerk's Entry of Default and Default Judgment (the

---

[3] Prior communications with Defendants in this action were exclusively through Pittsburgh counsel because Mr. Hutman was not yet admitted to this action *pro hac vice*.  *See* Ex. 7, Dkt. No. 11.

"Default") to Defendants on February 20, 2020.  Ex. 10.  Sadis also sent Defendants hard copies

of the Default which were delivered to their home, 1514 Cook School Rd., Pittsburgh, PA 15214,

on February 21, 2020.  Exs. 11 & 12.

The evidence is clear.  Defendants were properly served in this action on January 10, 2020

and were fully aware of this action in January 2020.  Defendants' failure to answer the Complaint

was a knowing, willful decision.

## II.   THE HISTORY OF THE SDNY ACTION AND SADIS' DISCOVERY OF THE FRAUDULENT TRANSFERS

As set forth more fully in the Complaint (Dkt. No. 1), as of July 1, 2009, Sumanta owed

Sadis $379,652.37 (the "Original Debt").[4]  Compl. ¶ 19.[5]  But by the end of 2008, Sumanta had

already transferred most of his assets to India in order to make them out of reach of creditors.  *Id.*

¶ 49.  And by the end of 2012, Sumanta had very few assets left in his name in the United States.

*Id.* ¶ 50.  In October of 2013, Sadis filed an action in the Southern District of New York under

Docket Number 13-cv-7355 (the "Original SDNY Action") to collect the Original Debt.  *Id.* ¶ 24.

Sadis retained a process server to serve Sumanta at his Pittsburgh home.  *Id.* ¶ 25. The process

server served Akshita, who initially accepted service of the summons and complaint on Sumanta's

behalf on November 5, 2013.  *Id.*  Akshita was therefore aware of Sadis' claim against her husband

as of November 5, 2013—at the latest.  *Id.*

After a dismissal without prejudice, Sadis re-filed the SDNY Action on February 13, 2014,

and the district court approved alternative service on Sumanta by email.  *Id.* at 28.  Sadis served

Sumanta by email but Sumanta did not respond or make an appearance and the SDNY entered a

---

[4] Under Sumanta's retainer agreement with Sadis, interest accrues at 1% a month.  Therefore, Sumanta's current debt exceeds $861,810.  *See* Hutman Affidavit in Support of Entry of Default and Default Judgment ¶ 5, Dkt No. 12-2, 4.

[5] The Complaint is Exhibit 1 to the Hutman Declaration.

default judgment on April 28, 2015.  *Id.* at 29.  A year later—the final day to make such a motion—Sumanta filed a motion to vacate the default judgment against him, just like he is doing now.  *Id.* at 30.  Sumanta argued—just as he argues here—that he had never been properly served, did not have actual notice of the SDNY Action, and had meritorious defenses.  Ex. 6 at 1, 13-14, 28; Ex. 13 at 3, 8, 18-19.  Judge Swain rejected Sumanta's motion to vacate his default and held that service was proper, Sumanta's notice rights were not violated, and Sumanta failed to proffer a meritorious defense.  Ex. 14 at 1, 7.  In particular, Sumanta's proffered interpretation of his contract with Sadis was "inconsistent with the plain and unambiguous terms of that agreement."  *Id.*

On appeal Sumanta challenged whether service was proper under FRCP 4(f)(3) and the Hague Service Convention—but did not challenge Judge Swain's finding that he did not have a meritorious defense.  Ex. 15 at 3.  On appeal, Sumanta also advanced a new argument, claiming that he was a U.S. citizen domiciled in India in February of 2014 and therefore outside of the SDNY's subject matter jurisdiction.  Compl. ¶ 31.  On March 22, 2018, the Second Circuit Court of Appeals ("Second Circuit") upheld the sufficiency of Sadis' service on Sumanta, writing "[t]he record sufficiently demonstrates that Banerjee received notice of the underlying action despite his and his relatives' efforts to avoid service."  Ex. 16 at 3.  But the Second Circuit remanded to the district court to determine whether Sumanta was domiciled in Pennsylvania ("PA") or India at the time the second Complaint was filed on February 13, 2014 which would determine whether there was federal subject matter jurisdiction over the SDNY Action.  *Id.*; Compl. ¶ 32.  Thus, contrary to the claim in Defendants' Brief (at 5), there is no danger of conflicting judgments because even if Sumanta is successful in getting the SDNY action dismissed for lack of subject-matter jurisdiction it will not affect the merits of this action.[6]

---

[6] Sumanta concedes that he was domiciled in PA when this action was filed.  Motion ¶ 2; Ex. 17 ¶ 16.

On remand, Sadis sought and received discovery on Sumanta's domicile in 2013 and 2014. Compl. ¶ 33.  On February 14, 2019, at his deposition, Sumanta testified that in 2014 he was sent a check for $431,610 he earned through his interest in Connecticut fund called Common Fund Distressed Partners II.  Compl. ¶ 36-37.  And both Sumanta and Akshita testified—Akshita's deposition took place on March 29, 2019—that Sumanta endorsed the $431,610 over to Akshita in 2014.  *Id.* ¶¶ 37-38.  In addition, Akshita testified that she did not declare the $431,610 on her income taxes because the income was Sumanta's not hers.  Ex. 18 at 129:8-22.  Akshita further testified she used much of the $431,610 for her "home building" and "to get things done in the home, cash to the builder"—a home that is in her name and not her husband's name.  Compl. ¶ 38.

Akshita was fully aware of the Original Debt.  Not only because she was heavily involved in all of her husband's legal matters[7] but because she had accepted service of Plaintiff's Original SDNY Action.  Both Banerjees also testified that Sumanta received a check in 2013 for $108,346 but transferred these funds to Akshita instead of using them to begin paying down his debt to Sadis. Compl. ¶¶ 41-43.  Prior to the Banerjees' depositions in 2019, Sadis had no reasonable means to discover the existence of these fraudulent transfers.  This action was filed within one year of the Banerjees' respective depositions and is therefore within the statute of limitations.

III. **SUMANTA'S HISTORY OF HIDING OR TRANSFERRING ASSETS, DODGING SERVICE, AND SEEKING TO VACATE DEFAULT JUDGMENTS**

A. *Banerjee's History of Hiding Assets and Stated Intention to Continue to do so.*

In addition to the fraudulent transfers at issue in this Action, at his February 2019 deposition, Sumanta testified that in the 2000s, in the years leading up to 2009-10, he had transferred all of his assets—worth millions of dollars—out of his name, primarily to his parents

---

[7] *See*, *e.g.,* Ex. 13 ("communication by and with the Massachusetts Courts … was directed to Mrs. Banerjee's email address).

in India which were put in a trust for which Sumanta was the beneficiary. Ex. 19 at 20:14-21:12, 64:4-20. The Banerjees worked with "asset protection specialist," Adam Chodus to "protect" and make it look like the Banerjees "do not have any assets." Ex. 20; Ex. 19 at 87:20-88:6, 90:11-17, 91:17-92:11, 95:19-96:2. Indeed, Tuckerbrook Alternative Investments L.P. ("Tuckerbrook") asserted in an arbitration that Sumanta "provided false testimony concerning 'his efforts to conceal assets and misrepresent his financial condition to the federal court in prior litigation.'" Ex. 21 at 10. The Arbitrator agreed with Tuckerbrook and held that "Banerjee was untruthful when questioned at his deposition about his assets and financial condition." *Id.* at 12.

Consistent with his prior behavior, on October 23, 2019, outside courtroom 20D in the SDNY, Sumanta told Sadis' counsel that if Sadis won the SDNY Action, it would never be able to collect on its judgment because Sadis could not access his assets. Hutman Decl. ¶ 2. Vacating the Default would only give the Banerjees more time and opportunities to further hide and transfer their assets to avoid paying Sumanta's debt to Sadis.

### B.   *Sumanta's Long History of Dodging Service and Trying to Vacate Defaults*

The Banerjees current attempt to deny that they were served and to try to vacate the Default is part of a pattern of behavior—further demonstrating the willfulness of their Default.

As previously set forth in Section II, *supra*, Sumanta ignored service in the SDNY Action and waited nearly a year before seeking to vacate Sadis' default judgment. *See* Compl. ¶¶ 29-30. Like here, Sumanta claimed not only that he was not served but that he "was completely unaware of the lawsuit." Ex. 6 at 25; *compare with* Motion ¶ 17. In denying Sumanta's motion to vacate, Judge Swain of the SDNY held that "Plaintiff had made numerous, documented attempts to serve Defendant in both the instant action and the original action." Ex. 14 at 6. And on appeal the Second Circuit similarly found that Sumanta did have notice of the SDNY Action. Ex. 16 at 3.

7

Case 2:19-cv-01682-AJS   Document 17   Filed 07/23/20   Page 12 of 21


A similar pattern was found in Sumanta's legal disputes with Tuckerbrook in the District of Massachusetts. In *Tuckerbrook Alt. Invs., LP, v. Banerjee*, No. 09-cv-11672 (WGY) (D. Mass.) ("*Tuckerbrook I*"), on May 27, 2010, Tuckerbrook requested an entry of default after: (i) Tuckerbrook served Sumanta in India and by email in November of 2009; (ii) Sumanta failed to answer and the D. Mass court entered a default against him on February 23, 2010; (iii) the court vacated the default when Sumanta made an appearance "claiming he was unaware of the proceedings and was never served"; (iv) Tuckerbrook attempted to deliver the complaint and summons two more times to India and sent them again by email; and (v) Sumanta failed to respond. Ex. 2 at ¶¶ 4-13. The *Tuckerbrook I* court initially entered the default against Sumanta but later, in an exercise of its discretion, vacated the default again. Ex. 22 at Dkt. Nos. 26 & 37.

In June of 2011, Tuckerbrook and Sumanta entered into a settlement agreement but Sumanta breached the settlement by testifying untruthfully at his deposition. Ex. 23 at 3:4-21; Ex. 21 at 14. At a conference on June 27, 2012, the D. Mass court ordered the filing of a new action. Ex. 23 at 6:3-20. Tuckerbrook raised the issue of serving Sumanta and the D. Mass court asked Sumanta if he would accept service at his home in Connecticut. *Id.* at 9:22-10:12. Sumanta agreed to accept service and the court ordered the filing of a new action. *Id.* at 10:9-13. Tuckerbrook then filed a new action *Tuckerbrook Alt. Invs., LP, v. Banerjee*, No. 12-cv-11643 (GAO) (D. Mass.) ("*Tuckerbrook II*"). Ex. 24. But again Sumanta refused to accept service—despite his representations to the court—or respond to emails attaching the summons and complaint and Tuckerbrook was forced to move to deem service of process effectuated. Ex. 25 ¶¶ 14-16, 19. Sumanta opposed the motion, again arguing he had "not seen or been served the complaint and is not aware of the contents." Ex. 4 ¶ 2. This time, however, the D. Mass court understood the pattern and held Sumanta was properly served. Ex. 26.

The Banerjees are trying to do in this Court what Sumanta did in *Tuckerbrook I*, *Tuckerbrook II*, and the SDNY Action: pretend they were "completely unaware" of a civil action for which they were served in order to delay payment for what they owe.  Fortunately, this time Sadis has clear proof of service and a voicemail from Akshita acknowledging the matter. Defendants have perjured themselves and should not benefit from their culpable conduct.

## ARGUMENT

**I.    SADIS PROPERLY SERVED DEFENDANTS, THEIR DEFAULT WAS WILLFUL AND THEY HAVE NOT ARTICULATED ANY OTHER BASIS FOR VACATING THE DEFAULT UNDER FRCP 60(b)**

The Banerjees' Motion should be denied because Sadis has demonstrated that the Banerjees were properly served, knew about the lawsuit, deliberately chose not to Answer, and are now lying to the Court.  No longer able to legitimately contest service or claim excusable neglect, Defendants have not articulated any other grounds for relief as required by FRCP 60(b) and their Motion to Set Aside Default Judgment must therefore be denied.

FRCP 55(c) only allows a Court to "set aside a default judgment under Rule 60(b)."  Rule 60(b), in turn, "lists six reasons for which a 'court may relieve a party or its legal representative from a final judgment, order, or proceeding.'"  *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008) (quoting FRCP 60(b)).[8]  Although default judgments are generally disfavored, courts "cannot apply this presumption against default judgments if doing so would be inconsistent with the Federal Rules of Civil Procedure or our case law interpreting these Rules."  *Id.* at 258;

---

[8] The six reasons are: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."  FRCP 60(b).  None apply here.

*Pennsylvania Land Holdings Corp. v. Mason*, No. 2:06CV1150, 2008 WL 3246868, at *2 (W.D. Pa. Aug. 6, 2008).

Here, Defendants have not expressly identified which reason listed in Rule 60(b) they maintain applies to vacate the Default. However, they argue (Brief at 4) that the judgment is void because they claim they did not receive proper service and imply (*id.* at 4, 8-9) that their failure to answer was excusable because they did not know about this lawsuit. These claims implicate FRCP 60(b)(1) & (4) but, as shown above, Defendants' claim is a lie. Defendants' were properly served by DeMasi on January 10, 2020 under FRCP 4(e)(2)(A)&(B) when he placed the summons and Complaint in Akshita's hands. McCarthy Aff. ¶¶ 6-7, Ex. A. The proofs of service executed by DeMasi (*id.* ¶ 7, Exs. B-C) an impartial process server with no reason to lie, create a "presumption that proper service was effectuated." *Hunt Optics & Imaging, Inc. v. Greene*, No. CIV.A. 10-503, 2010 WL 3303792, at *2 (W.D. Pa. Aug. 19, 2010); *accord FROF, Inc. v. Harris*, 695 F. Supp. 827, 829 (E.D. Pa. 1988) ("[A] bare allegation by a defendant that he was improperly served cannot be allowed to bely [*sic*] the private process server's return."). Akshita knowing the Answer due date and reaching out to Sadis' counsel on January 31, 2020 to discuss this Action and seek an extension (McCarthy Aff. ¶¶ 9, 11-12, Ex. D) is further evidence of proper service and conclusive proof that Akshita was fully aware of this lawsuit. Therefore the judgment is not "void" for lack of proper service and the Banerjees' failure to answer was not due to "mistake, inadvertence, surprise, or excusable neglect." FRCP 60(b)(1) & (4).

The only remaining clause in Rule 60(b) which could be arguably be claimed by Defendants in their moving papers is the catch-all "any other reason that justifies relief." FRCP 60(b)(6). However, in order to vacate a Default Judgment pursuant to Rule 60(b)(6), Defendants "must demonstrate the existence of extraordinary circumstances that justify reopening the

judgment." *Budget Blinds*, 536 F.3d at 255 (internal quotations omitted); *accord Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) ("[O]ur our cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment."). Demonstrating "extraordinary circumstances" exist "requires a showing of an extreme and unexpected hardship." *Johnson v. United States*, 375 F. App'x 273, 275 (3d Cir. 2010). Nowhere in their Motion or Brief do Defendants even attempt to show "extraordinary circumstances" or any sort of extreme and unexpected hardship. Therefore, Defendants cannot vacate the Default on the basis of FRCP 60(b)(6).

Even if Defendants could point to an applicable provision in Rule 60(b)(1)-(5)—which they cannot—the Court would still have to consider three factors: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct." *Budget Blinds*, 536 F.3d at 256. All of these weigh in favor of upholding the Default but Defendants' culpable conduct alone is sufficient to maintain the Default. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1184 (3d Cir. 1984) (upholding trial judge's decision "to enter a default judgment" where the defendant "callously disregarded repeated notices of a judicial proceeding"). Culpable conduct by defendants includes "willfulness," "bad faith," "acts intentionally designed to avoid compliance," and "[r]eckless disregard for repeated communications from plaintiffs." *Hritz*, 732 F.2d at 1183; *Sunoco, Inc. (R & M) v. Glob. Recycling & Demolition, LLC*, 300 F.R.D. 253, 257 (E.D. Pa. 2014) ("Conduct is culpable when the conduct leading to entry of default was 'willful, intentional, reckless or in bad faith").

Here, not only have Defendants not responded to the Complaint despite proper service and repeated notices from Sadis' Pittsburgh (McCarthy Aff. ¶¶ 14-15, Exs. E-G) and New York counsel (Exs. 8, 10-12) but they have also deliberately lied to this Court in claiming that they never

received any documents and were unaware of this lawsuit until June 15, 2020.  Motion ¶¶ 15-17.
Sadis "should not be deprived of a judgment if the [D]istrict [C]ourt finds [Defendants] guilty of
the culpable conduct as set forth above." *Hritz*, 732 F.2d at 1183.

## II.    THE BANERJEES DO NOT HAVE A MERITORIOUS DEFENSE

The Banerjees were properly served and therefore their perjurous assertion of lack of
service is not a meritorious defense. The rest of Defendants' asserted defenses are similarly invalid.

### A.    *The First Filed Rule is Not a Defense and Inapplicable Because this Action is Already Completed and There is No Potential of Conflict.*

The Defendants cannot use the so-called "first filed rule" as a meritorious defense because
it is not a defense at all.  Rather it is an "equitable principle … to avoid burdening the federal
judiciary and to prevent the judicial embarrassment of conflicting judgments." *E.E.O.C. v. Univ.
of Pennsylvania*, 850 F.2d 969, 977 (3d Cir. 1988), *aff'd,* 493 U.S. 182 (1990).  Additionally, the
first-filed rule is inapplicable in this case because "courts have rejected the rule when the second-
filed action ha[s] developed further than the initial." *Id.* at 976.  This Action is post-Judgment and
therefore further along than the SDNY Action which is still pending.

Moreover, contrary to Defendants claim (Brief at 5), there is no possibility of conflicting
judgments between this Action and the SDNY Action.  The SDNY already held—uncontested on
appeal—that Sumanta does not have a meritorious defense because "the plain and unambiguous
terms of that agreement … reflect Defendant's outstanding debt to Plaintiff."  Ex. 14 at 7.  The
only issue currently before the SDNY is whether there was diversity jurisdiction at the time the
SDNY Action was filed.  *See* Ex. 16 at 3.  Even if Sumanta were to prevail on that issue, the debt
would not be extinguished.  Rather, Sadis would simply bring its claims in state court.  Finally,
this Action seeks to undo the fraudulent transfers—separate torts that have not been brought in the

SDNY Action—and recover the funds from Akshita who was not a party to the debt at issue in the SDNY Action.[9]

> **B.**     ***Plaintiff's Allegations are Not Based on Confidential Information and Use of Confidential Information is not a Defense.***

Defendants asserts (Brief at 6), without citation, that Sadis learned of the fraudulent transfers from confidential records subpoenaed from H&R Block and Fidelity Investments.  This assertion is baseless.  The Complaint is clear that Sadis learned about the fraudulent transfers between the Banerjees from the Banerjees themselves at their depositions in the SDNY Action.  Compl. ¶¶ 36-38.  And the facts of the fraudulent transfers cannot themselves be confidential because Sumanta testified to them in open court on March 3, 2020.  *E.g.,* Ex. 27 at 42:1-11.  Moreover, even if the Complaint was based on genuine confidential information, Defendants do not cite any case—and Sadis is not aware of any—that recognized a defense based on a plaintiff's use of information protected by a protective order in another action.  It is simply not a defense.

> **C.**     ***Plaintiff's PAUFTA Claim is Not Time-Barred Because it Was Brought Within a Year of Reasonable Discovery of the Fraudulent Transfers.***

The Complaint is clear that Sumanta transferred the funds at issue—and Akshita accepted them—with "actual intent to prevent those funds from being collected by Sadis and other creditors of Mr. Banerjee."  Compl. ¶ 54.  This states a claim for a fraudulent transfer under 12 Pa.C.S. § 5104(a)(1) which makes voidable transfers made "with actual intent to hinder, delay, or defraud any creditor of the debtor."  And PA law is clear that claims under "section 5104(a)(1)" can be brought "not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant."  12 Pa.C.S. § 5109(1).  Sadis could not have known about the

---

[9] Which is precisely why Sumanta sought to protect his assets from collection by transferring them to Akshita.  Compl. ¶¶ 54-55, 68-69.

fraudulent transfers at issue until they were revealed in February and March 2019 at the Banerjees' depositions—less than a year before this action was commenced on December 31, 2019.[10] Therefore, Sadis' claim under the PA Uniform Fraudulent Transfer Act ("PAUFTA") is timely.[11]

### D.     The Complaint Clearly States Claims Under PAUFTA and the New York DCL.

As stated, Sadis' claims are that Sumanta transferred the $539,956 to Akshita—$108,346 in 2013 and $431,610 in 2014—with actual intent to defraud Sadis and his other creditors.  Compl. ¶¶ 34-43, 51-54, 65-68.  Defendants argue (Brief at 7-8; Motion ¶¶ 57-60) that Sumanta had no knowledge of the SDNY Action or the Original SDNY Action at the time the transfers were made in 2013 and 2014.  But as the Second Circuit already held regarding those actions that the "record sufficiently demonstrates that Banerjee received notice of the underlying action despite his and his relatives' efforts to avoid service."  Ex. 16 at 3.  And Akshita had already received service of the Original SDNY Action in November of 2013 and therefore knew of the litigation.  Compl. ¶ 25.  Moreover, even Defendants cannot, and do not, deny that Sumanta was fully aware of his debt to Sadis—which he had owed since July of 2009—when he made the transfers.  Compl. ¶¶ 20-21.  Nor do Defendants claim that Akshita was unaware of Sumanta's debt to Sadis.  Defendants have therefore not raised any colorable, good faith defense based on ignorance.

Defendants' argument (Brief at 8) that the transfer was pursuant to a 2012 agreement between the Banerjees is no defense because Sumanta owed his debt to Sadis from at least July 2009.  Compl. ¶¶ 20-21.  Moreover, the separation agreement referenced by Defendants is clear on its face and  only provided for child support and spousal support after it is filed with a court—

---

[10] Ironically, Defendants assert (Brief at 6) that Sadis learned of the fraudulent transfers from records subpoenaed from H&R Block and Fidelity, which occurred even closer to the filing date of this Action.  *See* Ex. 28, August 26, 2019 Opinion and Order authorizing subpoenas duces tecum on H&R Block and Fidelity.

[11] Defendants do not even proffer a statute of limitations defense to Sadis' New York fraudulent transfer claim.

no such filing ever occurred—and did not require Sumanta to transfer all future income to Akshita. Ex. 29 at 3, 6; Ex. 19 at 128:2-24. This, like the rest of Defendants' asserted defenses, is not meritorious and cannot serve as a basis for vacating the Default.

## III.   VACATING THE DEFAULT INCREASES THE RISK THAT THE BANERJEES WILL FURTHER HIDE OR TRANSFER THEIR ASSETS.

Vacating the default will also greatly prejudice Sadis because it substantially increases the risk the Banerjees will hide or fraudulently transfer their assets to prevent Sadis' collection.

Sumanta has a history of hiding assets and lying about it. In the 2000s he hired an "asset protection specialist," Adam Chodus, specifically to make it look like the Banerjees "do not have any assets." Ex. 19 at 87:20-88:6, 95:19-96:2; Ex. 20 at 2. And an independent arbitrator, Margaret Hinkle, found that when Sumanta was asked about "his efforts to conceal assets" at his deposition in *Tuckerbrook I*, Sumanta's answers were "untruthful." Ex. 21 at 10, 12. Critically, when Sumanta received $539,956 over 2013 and 2014, he did not use it to pay his debt to Sadis— he fraudulently transferred it to his wife. Compl. ¶¶ 34-43, 51-54, 65-68. And Sumanta specifically told Sadis that it would never be able to get to Sumanta's assets to collect the debt. Hutman Decl. ¶ 2. Where, as here, "Plaintiff has alleged with specificity acts of actual fraud … and the diversion of millions of dollars away from creditors" and the "Defendant[s] may have used the past four months to further cover [their] tracks" vacating the Default may "prejudice[] the Plaintiff[s] by allowing time to destroy evidence or conceal assets." *JPMorgan Chase Bank, N.A. v. Pandolfelli*, No. ADV 09-02068 DHS, 2010 WL 3745123, at *3 (Bankr. D.N.J. Sept. 14, 2010).

## CONCLUSION

For all of the reasons set forth above, including that Defendants were properly served, willfully defaulted, and have failed to set forth a basis for relief under the FRCP or present meritorious defenses, Defendants' Motion to Set Aside the Default Judgment should be denied.

Dated: July 23, 2020                        /s/ Katelin J. Montgomery
                                            Katelin J. Montgomery
                                            Pa.I.D. #322698

                                            MEYER, UNKOVIC & SCOTT LLP
                                            535 Smithfield Street, Suite 1300
                                            Pittsburgh, PA 15222
                                            412-456-2530

                                            -and-

                                            Ben Hutman (Admitted *pro hac vice*)
                                            NY ID No. 5127451
                                            Sadis & Goldberg, LLP
                                            551 Fifth Avenue, 21st Floor
                                            New York, New York 10176
                                            212-573-6675
                                            bhutman@sadis.com

                                            *Counsel for Plaintiff Sadis & Goldberg, LLP*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing Plaintiff's Opposition to Defendants'

Motion to Set Aside Default Judgment was served upon opposing counsel on July 23, 2020, using

the Court's CM/ECF system and email to:

      Beverly A. Block, Esq.
      Marcie J. Solomon, Esq.
      Block & Associates, LLC
      6425 Living Place, Suite 200
      Pittsburgh, PA
      (412) 450-6021
      block@blockandassociatespgh.com
      msolomon@blockandassociatespgh.com


Dated: New York, New York
July 23, 2019                         _/s/ Ben Hutman_____
                                        Ben Hutman
                                        SADIS & GOLDBERG, LLP
                                        551 5th Avenue, 21st Floor
                                        New York, New York 10176
                                        (212) 573-6675