# EXHIBIT 6

Docket and File

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/27/16

SADIS & GOLDBERG, LLP,
        Plaintiff,

v.

SUMANTA BANERJEE,

        Defendant.

Case No. 1:14-CV-913 (LTS)



RECEIVED
APR 27 2016
CHAMBERS OF
LAURA TAYLOR SWAIN
U.S.D.J.

## MOTION TO SET ASIDE DEFAULT JUDGMENT and MOTION TO VACATE DEFAULT

### and

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT

Respectfully Submitted,
SUMANTA BANERJEE

*Pro se Litigant*
*58/1 Ballygunje Circular Rd*
*Kolkata-19*
*West Bengal*
*India*
*Email: zbacllc@gmail.com*

1

## MOTION TO SET ASIDE DEFAULT JUDGMENT

Pursuant to Fed. R. Civ. P. 60(b), Defendant Sumanta Banerjee, a US citizen and resident of India at 58/1 Ballygunje Circular Rd, Kolkata -19 (Please Exhibit 1 Affidavit from Sumanta Banerjee), respectfully asks that the Court vacate the Default Judgment as void. Mr. Banerjee recently found out about this lawsuit from a friend and had to go into the PACER system to extract all the specious claims of Mr. Douglas Hirsch ("Hirsch" or the "Plaintiff") and Sadis & Goldberg ("Sadis" or the "Plaintiff"). Mr. Banerjee is appearing *pro se* in the interest of time and has not had time to obtain legal representation. Mr. Banerjee would respectfully submit that both Service of Process and the entry of the Default Judgment violated the Hague Convention.[1] The Default Judgment should also be vacated under Rule 60(b)(1)(2)(3). Additionally, the declaration from the Plaintiff, Sadis & Goldberg ("Sadis" or "Plaintiff") stating that Mr. Banerjee is in receipt of the Summons, Complaint and Judgment is clearly a blatant attempt to mislead this Court and violation of FRCP Rule 4.

Furthermore, the claims are meritless and baseless since a pledge agreement was agreed upon as part of July 2008 Agreement in which the Plaintiff was expected to foreclose on Pledge Collateral (Mr. Banerjee's converted GP interest worth many multiples of the Sadis Invoice as of January 31, 2009). This mechanism was built into the July Agreement after extensive verbal negotiations and was supposed to "settle" the invoice initially, avoid any lawsuit and "zero out" the Invoice when the Collateral would have paid cash to the Plaintiffs at or near the end of the Term of the GDF Fund where Mr. Banerjee was a 50% member of the General Partner. Plaintiff

---

[1] The standard for setting aside the entry of default is lower than that for vacating a default judgment. *Brand Scaffold Builders, Inc. v. Puerto Rico Elec. Power Auth.*, 364 F. Supp. 2d 50, 54 (D.P.R. 2005). Accordingly, if the Court vacates the Default Judgment, Mr. Banerjee asks that it also set aside the entry of default. The Articles of the Hague Convention are found in Exhibit 2, annexed hereto.

never foreclosed and chose to violate the July 2008 Agreement and waste the Courts' time with this frivolous lawsuit.

## I.    FACTS

The Court has been misled by the Plaintiff by not disclosing to the Court (see Attached Exhibit A) that the July 2008 Agreement had a mechanism where the invoice was "settled" by the Plaintiff triggering the Pledge Agreement (see email Exhibit B showing Douglas Hirsch had triggered it) and foreclosing on Mr. Banerjee's 50% share in Tuckerbrook|SB Global Distressed Fund GP.  The Plaintiff intentionally misled the Court and has wasted the Court's time by bringing this suit in violation of the Pledge Agreement and the July 2008 Agreement.  When the July 2008 Agreement was executed, Hirsch was expected to foreclose on the GP interest (the collateral) as payment for the invoices (see Exhibit C showing email exchange between Mr. Banerjee and Doug Hirsch).

Douglas Hirsch and his firm Sadis & Goldberg should face stiff penalties for gross misconduct and violation of ethics. The Plaintiff has not followed the Hague Convention Rules for Service Abroad, in this specific case and has misrepresented the facts in order to file a lawsuit in direct violation of the July 2008 Agreement.  Additionally, the declaration of service from the associate of Sadis is clearly a blatant attempt to mislead this Court—the package was never delivered and was returned to Sender as evident in the exhibits *of the Plaintiff*. The Default Judgment should also be vacated under Rule 60(b)(1)(2)(3) and the Court should dismiss all charges.  Mr. Banerjee is a victim of this "unethical" law firm and its "unethical" partner Mr. Douglas R. Hirsch and the Court should recognize that it has been misled with all the ex parte communication from the Plaintiff and hopefully will set things right in the interest of Justice.

# BACKGROUND FACTS

1. Mr. Banerjee is an ivy league-educated investment professional. At the time of the initial case, in 2008, Banerjee was an investment portfolio manager who specialized in turnaround, distressed, restructuring, and credit investments. He had over 15 years in these fields and had worked for well-known investment advisors and investment banks, including JP Morgan, Evercore Partners and CommonFund.

2. In late 2005, Banerjee left CommonFund, where he had been serving as the managing director and portfolio manager for two distressed and credit-focused private equity fund of funds to start his own private equity/hedge fund of funds. Upon his departure from CommonFund, several of the investors followed him and invested in his new venture. Banerjee needed a partner to shoulder some of the start-up costs and the partner he chose was Tuckerbrook Alternative Investments ("TB").

3. Banerjee and TB had launched two funds in 2007, TB|SB Global Distressed Fund ("GDF") and TB|SB Global Special Situations Fund ("GSF"). TB and Banerjee were 50-50 partners of the General Partner and Banerjee was the 50% managing member of the two funds. Due to various disagreements with TB, Banerjee approached Sadis to resolve the issues between the two partners. Ron Geffner's "incompetence" and desire to enrich the firm forced Mr. Banerjee into a legal battle for control of the Funds that Mr. Banerjee managed ($125MM). Due to Banerjee's disappointment of Geffner's handling of the case, Sadis gave Banerjee a $5,000 discount that was reflected in the July 2008 Agreement.

4. In July of 2008, after several conversations with Hirsch about the large bills that were accumulating, Hirsch intimated that he would no longer represent Banerjee in this case until and unless he was paid. Banerjee had told Hirsch that he could not pay his inflated

bill and as a result Hirsch devised another form of payment using Banerjee's GP interest in the Fund as collateral. Banerjee offered to give Hirsch his share of the fees from the GP interest in GDF that Banerjee had co-managed. Hirsch readily and happily accepted Banerjee's collateral which was expected to be worth many multiples of Hirsch's bills. The agreement would allow for Hirsch to foreclose on the Collateral and "settle" the invoice, avoid any lawsuit and "zero out" the Invoice when Sadis/Hirsch was paid the Incentive Fees from GDF at the or near the end of the term of GDF.

5. The July 2008 Agreement is attached hereto as Exhibit A. As the Court can see the second page contemplates how the pledge agreement will be used to "settle and zero-out" the amount that Banerjee owes to the Plaintiff.

> Finally your signature below will acknowledge that you will enter into an agreement that you will pledge your converted GP interest into limited partnership interest in GDF as collateral for any outstanding legal fees owed, should you fail to zero out your balance on or before September 30th 2008. **We will forward you a *pledge agreement* at that time for review by your personal counsel. The pledge agreement shall provide that Sadis & Goldberg LLP cannot foreclose on the interest until January 31st 2009. [emphasis added]**

Furthermore the Court should note that the Plaintiff intentionally omitted to include this information about the July 2008 Agreement in all of the duplicate pleadings to the Court and has misrepresented and misled the Court with this baseless lawsuit.

6. Hirsch ensured that he got four additional clauses (1)Banerjee was agreeable to the invoice till that date ($249,000); (2) Banerjee was happy with his work; and (3)Banerjee would accept any Settlement that Hirsch deemed "reasonable"; and (4)Banerjee pay $25,000 from the release of the funds which the Court had escrowed at the start of the litigation with TB. Hirsch threatened to resign as counsel unless Banerjee accepted the July 2008 agreement in its entirety as drafted by Hirsch and Sadis which included the above clauses.

7. The case between TB and Banerjee continued from April 2008 until Banerjee accepted a settlement agreement in September 2008. Once the escrowed fees were released at the end of 2008, Banerjee did pay Sadis the agreed upon amount of $25,000. The Plaintiff had billed an additional $130,000 after the signing of the July 2008 Agreement. Banerjee never agreed to that additional amount, but had no choice as per the July 2008 agreement as Sadis would foreclose on the collateral and offset any amount outstanding. Banerjee at the end of 2008, did not have gainful employment nor had he started another other fund.

8. As of January 31st 2009, Sadis had not sent Banerjee any Pledge Agreement as dictated by the terms of the July 2008 Agreement, nor had Sadis sent a foreclosure agreement and as a result had not foreclosed on the collateral. Please see Exhibit A annexed hereto as well as ¶ 5 above.

9. In January 2009, Banerjee and his family had moved to India for family reasons. From April 2009 to Oct 2009, Hirsch and Banerjee communicated several times about the assignment agreement, collateral, and the foreclosure of the collateral. It included,

> **April 21, 2009**:
> Hirsch to Banerjee---"Sam, I need to speak with you. I want to get your interest in the GDF Fund assigned to us and have them make the distributions to us as per our agreement. Please call me. Thank you.
>
> **July 21, 2009**:
> Hirsch to Banerjee--Sam, I will look at the bill- you are correct-nothing should have been recently added to the bill.
> However, if and when we receive assignment of the GP interest, it does not "settle" the bill. Once we are paid in full, from proceeds of the GP interest, or otherwise, will the bill be settled.
>
> I will work on finalizing the assignment paperwork with you in the next two weeks.
>
> **Sept 1, 2009:**
> Banerjee to Hirsch----I have not seen anything from you. Please send me the doc that directs the cash flows to be paid to you. I will take it to Alkek. Thx
>
> Hirsch to Banerjee---I have to draft it and I am on vacation. In the meantime, send me Scott's phone number so that I can get the info I need.

Banerjee to Hirsch----Scott will not talk to my counsel. Let me know what you need and I can get it for you. Alt, you can call his counsel and get what you need that way. I believe you have his counsels no.

**Oct 15, 2009:**

Banerjee to Hirsch ---See attached. I was trying to get you the benchmarks--hence it took time. I could not locate them. Anyway, the Funds performance is in the top quintile for similar funds. Also, keep in mind that valuations in PE land (FOF) are mostly one quarter lag --- in other words the valuation is for March 2009. So the market rally from March 2009 onwards is not reflected in the numbers.

I thought you were supposed to send me the revised agreement -- have not received it yet. [Emails attached as Exhibit C]

As is evident from the emails included above, they were in agreement as to the process-- regarding the payout procedure and the "settling and zeroing out" of the invoice through the foreclosure of the collateral as agreed upon in the July 2008 Agreement. Additionally, Banerjee was diligent in following up regarding the revised agreement that he was waiting for but never received. Though they communicated on other matters and despite Banerjee reminding Hirsch of the outstanding revised agreement, Hirsch never sent it. Banerjee had not heard from Hirsch until Banerjee called him in early in 2013 about another matter. Thereafter, it appears that Hirsch filed the first case-13cv-7355. This case has no merit because the July 2008 Agreement provide for a settlement of the invoice through the pledge agreement contemplated in the July 2008 agreement and the foreclosure of the collateral. **The plaintiff is clearly in breach of the July 2008 Agreement. Furthermore, the Court should note that the Plaintiff completely omitted any reference to this part of the July 2008 Agreement, thereby, misleading the Court. Hirsch has also misrepresented to the Court that Banerjee was supposed to pay his invoice in cash when this Agreement and its structure was created to "settle" the outstanding bill of the Plaintiff and avoid any lawsuit. The entire purpose of the July 2008 Agreement, was to have form of**

payment for Sadis and Mr. Hirsch. **Mr. Banerjee had been explicitly clear that he could not pay Sadis's "inflated" bill and hence BOTH parties devised the mechanism to get Sadis/ Hirsch paid so they could continue as counsel in the case with Tuckerbrook.**

10. The Plaintiff's first case, 13-cv-7355(LTS) was started in October 2013. Although the Plaintiff hired an investigator, the information that the investigator provided to the Plaintiff was incorrect. The investigator concluded that Banerjee was living in Pittsburgh, when in fact, Banerjee was still residing in India. When the processor did not find Banerjee, he harassed and terrorized Banerjee's children upon their return from school for several days until he could serve the papers on Mrs. Banerjee as an alternate to serving Banerjee. The processor harassed Mr. Banerjee's family and forced Mrs. Banerjee to take the complaint papers by having the processor accompanied by the local police despite Mrs. Banerjee reiterating that Banerjee **does not** live in Pittsburgh. The next day, Mrs. Banerjee returned the papers to the Court and Hirsch based on advice of the Court. Mrs. Banerjee reiterated in the letter (Please see Exhibit D), again, that Banerjee **does not** live at 304 Harvester Cir. Pittsburgh, PA 15241; Banerjee in fact has resided in India at **58/1 Ballygunje Circular Road, Kolkata 700019, West Bengal India** since January of 2009. The Plaintiff was well aware of Mr. Banerjee's residence in India. Mr. Banerjee had communicated (from India) with Hirsch in **early 2013 on a different matter** prior to the filing of the first lawsuit, filed in October of 2013. Banerjee had no agenda to ever avoid service as he signed the July 2008 Agreement in good faith and Mr. Banerjee's wife provided the address for service.

11. The Central Authority received the papers of 13-cv-7355 in December of 2013 (the old dismissed case as of January 2014, Exhibit E). The Central Authority did not serve the

papers to Mr. Banerjee's address, rather they harassed and forced his ailing mother Dr. Reba Banerjee ("Dr. R"), who is over 80 years old to take the papers. The date of the "service" of the papers served to Dr R was 1/2/2014, the British way of writing February 1, 2014. It can be inferred from the date stamp, [please see Exhibit F] these were papers from the dismissed case 13-cv-7355, rather than the new case 14-cv-913, since the new case did not start until Feb 13, 2014. Furthermore, please see Exhibit G, the affidavit of Dr. R, who clearly states that her address is **Flat 142B, 58/1 Ballygunje Circular Road, Kolkata 700019, West Bengal India** while Banerjee's address has been, since January 2009, **58/1 Ballygunje Circular Road, Kolkata 700019, West Bengal India.** Dr. R's attorney, Mr.Kundu returned the papers (Exhibit H) of the old case to the Plaintiff on Feb 10, 2014, several days prior to the filing of the new case by the Plaintiff. The Court should note that Dr. R was incorrectly served at the incorrect address, papers from the old dismissed case, 13-cv-7355. Both Dr. R and Mr. Kundu reiterated in their Affidavit and letter pointed that Mr. Banerjee did not reside at her address and he was currently travelling abroad.

12. Mr. Banerjee was never served with papers from either case by the Central Authority. Please see Exhibit I, a filing of the Plaintiff's, document 8-2 Exhibit A, an email from Paulina Stamatelos, dated **May 01, 2014,** which says,

> "Given that we have yet to serve you by India's Central Authority, and you refuse to cooperate with us to agree to a preliminary pre-trial statement per the Court's Order that I have emailed and mailed you in March, do you agree to an adjournment of the May 16, 2014 Initial Conference Order?"

On June 12, 2014, Sadis filed a Certificate of Service purporting to show that the Complaint had been delivered to the address of Mr. Banerjee when in fact it had been delivered to Dr. Reba Banerjee ("Dr. R"), Mr. Banerjee's elderly mother. Additionally the papers that were

given to Dr R were not even the papers of the current case, 14-cv-913, they were papers of the previous case, as evidenced by the dates of the Central Authority receipt.

13. It can be inferred by the time stamp that the package that the Plaintiff sent by FedEx in March 2014 to the Central Authority were the papers associated with the current case, of 14-cv-913. Although the Plaintiff has NOT provided proof that the Central Authority ever delivered those papers to Banerjee. Furthermore, the Plaintiff has not provided any proof to the Court that they have made *every reasonable effort*, for at least 6 months, to obtain a Certificate of Service on the current case. Accordingly, the plaintiff has violated Article 15 of the Hague Convention. Please see correspondence between the Plaintiff and Central Authority, included as Exhibit J ,that shows clearly that the Plaintiff has only conversed with the Central Authority on June 4, 5, and 8 of 2014; hardly the 6 months required by the Articles of the Hague Convention and hardly a "reasonable" effort after mailing the Central Authority on March 18, 2014 (less than three months).  No proof of any further communication or "reasonable effort" to reach the Central Authority in India is shown anywhere in the Court filings.

14. In the current case, 14-cv-913, there are also factual inconsistencies, proof of unethical behavior, and outright perjury.

    a. The Plaintiff lack of moral and ethical standards are evidenced by their behavior. Banerjee found the case and all its exhibits through the Pacer system after being alerted by one of his friends. During his research, Banerjee discovered that the Plaintiff also **maliciously** included in **4 separate docket filings**, all of Banerjee's personal information, including his **date of birth, his full name and personal details, and most importantly, his full social security number**.  This has no

relevance to this lawsuit and it seems like a purely malicious act by Sadis and Hirsch. This information has exposed Mr. Banerjee to grave danger from identity thieves and the like. Although the Plaintiff has just recently, April 20, 2016, stricken the information, after Mr. Banerjee's wife called the Company that Sadis hired, Compinstall, Inc., and alerted them to the fact that highly confidential personal information was in public domain for over 3 years. The Plaintiff demonstrated a complete lack of regard of confidentiality of the personal information given to him by the private investigator, bringing into question and doubt the ethical and moral standards for the entire firm of Sadis & Goldberg and its partner, Douglas R Hirsch. This action is a clear violation of Fair Credit Reporting Act (FCRA) and Banerjee is taking steps to notify the Federal Trade Commission as well as the Bar Association of New York.

b.  The plaintiffs have included as proof of service several invoices of FedEx but none of the packages were ever received by Banerjee. The package, in March of 2014, that was "mailed" through FedEx was marked by FedEx as "refused by receipt". Banerjee never received this package (see Banerjee Affidavit , Exhibit 1). Again, as mentioned previously and subsequently receipt of documents via regular postal channels is not permitted as per the Article 10 of the Hague Convention as it applies to India.

c.  The next package sent also by FedEx, sent out on 7th July 2014 was never delivered, shows clearly that there was a **"Delivery exception"**. In the *Declaration of Michelle Tanney*, Plaintiff's docket #34, annexed as Exhibit K, she states,

"9. Annexed as Exhibit H is a FedEx tracking order dated July 7, 2014, **confirming delivery of the Summons and Complaint to Defendant**" (emphasis added)

Furthermore, the Court used Ms. Tanney's perjurious declaration as support for proof of delivery of the documents to Banerjee.

d. Another example of the unethical behavior of the law firm Sadis & Goldberg was the blatant padding of the legal invoices that were provided to the Court as proof of the hours worked in order to file this lawsuit. The hours and amounts listed below were supported in affidavits by the Sadis & Goldberg, its partners and associates, Hirsch, Tanney, Stamatelos and other members of the Plaintiff. In filings by the Plaintiff, docment#40-6 (Exhibit L) which is a bill for professional services dated Jan 8, 2015, on Page 6,

| | | |
|---|---|---|
| 3/14/2014 | PS | Banerjee service of court order; discussion With E. Gitlin re:payment plan/affidavit of judgment. |
| 3/18/2014 | PS | Review Banerjee documents; Gitlin Stipulation issues; and review procedures for filing Ehrman confession of judgment. |
| ...... | | |
| 4/8/2014 | PS | Haft settlement; banerjee motion. |
| ........ | | |
| 6/4/2014 | PS | Manzella complaint; banerjee motion |
| ...... | | |
| 6/9/2014 | PS | Finalize and efile collection complaint against Manzella; finalize draft motion to deem service effected in S. Banerjee collection matter. |

*(amounts of each entry omitted, approximately $9,000, Exhibit L)*

Ehrman, Haft, Manzella and Gitlin are not attorneys at Sadis & Goldberg, rather they appear to be clients of Sadis. The question then becomes—why are those names listed on an invoice for Mr.Banerjee. None of those names have anything to

do with Mr. Banerjee or his case(s). Yet another example of lack of ethical standards that govern the firm of Sadis & Goldberg.

e. Hirsch and Sadis make repeated references to "8" cases in the Pacer electronic filing system. Another example of obfuscating the situation to mislead the Court. The Cases referred to in Plaintiff's docket number 8-11, are all in MA Court system with the same Plaintiff, the ex-Partner of Mr. Banerjee, Tuckerbrook Alternative Investments. There are two other cases in the list which are not Mr. Banerjee's, even though the name is the same. Additionally, two of those listed cases have been filed by Hirsch and Sadis (one dismissed and one current).

In summary, this lawsuit filed by Sadis and Hirsch is a blatant example of baseless claims built on factual misrepresentations, omissions, flagrant disregard for the rules and regulations of the Hague Convention, perjury, malfeasance, misrepresentations and breach of the July 2008 Agreement.

## II.   ARGUMENT

The Court must set aside the Default Judgment because it is void as a matter of law and dismissal is non-discretionary under Rule 60(b)(4). Proper service of process is a critical prerequisite to the exercise of personal jurisdiction over Mr. Banerjee, and as India is a signatory to the Hague Convention and has expressly objected to service in any other manner, the Court had no authority to order any other form of service. Mr. Banerjee respectfully submits that the Court erred in allowing service via email because it based its decision on (1) Banerjee's address changed due to Mr. Banerjee's mothers affidavit. Mr. Banerjee's address remains the same as in the Massachusetts litigation – the person from Central Authority went to the incorrect address of his mothers' which is Flat 142B, 58/1 Ballygunje Circular Rd and NOT 58/1 Ballygunje Circular Rd. (2) As Mr. Banerjee has stated in his Affidavit, he has not used the "sbaner@gmail.com" email

since 2013 as it has become populated with spam and junk. The court in Massachusetts has not communicated with him on this email nor has Mr. Banerjee communicated with the Court via this email since 2013. As a result, Mr. Banerjee was unaware that service was effectuated into this email since it is a "virtually defunct" email. Mr. Banerjee had to use the PACER system to retrieve all the documents when he was alerted recently about this case since he fully intends to fight the case on its merits. (3) The Court has allowed service by email pursuant to Article 10 of the Hague Convention (that it specifically does not address email) and FRCP 4(f)(3). However, the Hague Convention is exclusive and compliance with the Hague Convention is mandatory in all cases that it applies to. As Mr. Banerjee is a resident of India, the Articles of the Hague Convention do apply to him. That is, so long as the party to be served is located in a member state and no exception applies (e.g., Article 1 provides an exception where the address of the party to be served in not known), service of judicial and extrajudicial documents must be effectuated by means authorized under the Convention. Second, no provision under the Articles of the Hague Convention authorizes service by email.

In other words, the Court erred (probably due to the address issue) to find the Convention doesn't prohibit service by email, so it must be allowed under Article 10. Instead, service by such means is proper only if the Convention expressly permits it, and the only provision that might be seen as permitting such service is Article 10, which refers to "postal channels" (please bear in mind that the Convention was drafted in 1965 and was never amended, so it's no surprise it doesn't expressly refer to electronic mail), but India has formally objected to service under Article 10 in its entirety. Furthermore, Article 14 of the *Universal Postal Convention* defines "electronic mail" as "a postal service involving the electronic transmission of messages". This would fall under the "postal channel" that India has objected to in its entirety. Under Fed. R.Civ.P.4(f)3, Courts can

14

authorize service of process by email in particular cases as long as international agreement does not forbid it. As discussed above, since India has objected to Article 10 in its entirety, the Court should not be able to take personal jurisdiction over Mr. Banerjee in this case via improper email service. Absent service of process, the judgment is void and must be vacated under Rule.60(b)(4). In addition, the Default Judgment itself violates Article 15 of the Hague Convention, rendering it void.

The Default Judgment also should be vacated under Rule 60(b)(1)(2)(3) in view of the Court's legal errors as a result of misrepresentations by the Plaintiff in all *ex parte* communication so far and Mr. Banerjee's mistake, inadvertence, surprise or excusable neglect.

### A. The Default Judgment Is Void For Lack of Service and Must Be Vacated.

1.  <u>A Judgment Based On Defective Service of Process Is Void.</u>

Fed. R. Civ. P. 60(b)(4) requires a void judgment to be set aside:

> The governing principles are that a default judgment issued without jurisdiction over a defendant is void, that it remains vulnerable to being vacated at any time, and that such jurisdiction depends on the proper service of process or the waiver of any defect.

*M & K Welding, Inc. v. Leasing Partners, LLC*, 386 F.3d 361, 364 (1st Cir. 2004). *See also Shank/Balfour Beatty v. IBEW Local 99*, 497 F.3d 83, 94 (1st Cir. 2007)("When judgment is entered against an entity never properly served as a party to the case, the judgment is 'void' within the meaning of Rule 60(b)(4).")

Proper service of process is a prerequisite to the exercise of personal jurisdiction:

> Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. ... [T]here must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to

> service of summons. Absent consent, this means there must be
> authorization for service of summons on the defendant.

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (quotation omitted). *See*

*also Jardines Bacata, Ltd. v. Diaz-Marquez*, 878 F.2d 1555, 1559 (1st Cir.1989) ("the district court

acquires jurisdiction over a defendant only by service of process...."); *Williams v. Jones*, 11 F.3d

247, 254–55 n.11 (1st Cir. 1993) (vacating judgment and remanding for service of process).

Once service is challenged, it is the plaintiff's burden to prove proper service. *Rivera-*

*Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir.1992). Actual knowledge of the

lawsuit is insufficient. *Omni Capital* 484 U.S. at 104; *Precision Etchings & Findings, Inc. v. LGP*

*Gem, Ltd.*, 953 F.2d 21, 24 (1st Cir.1992).

Absent proper service, the court lacks jurisdiction, and any judgment is void. Unlike other

Rule 60(b) grounds, a motion under Rule 60(b)(4) leaves no room for discretion: if the judgment

is void, the Court must set it aside. *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24, 28 (1st

Cir. 1988); *See also* 11 Wright, Miller & Kane, *Federal Practice & Procedure* § 2862 (2d ed.)

("Either a judgment is void or it is valid [and] ... when that question is resolved, the court must

act accordingly.").

2. The Hague Convention is Exclusive and Mandatory.[2]

Where process must be served abroad and the foreign nation is a signatory, the Hague

Convention provides the mandatory and exclusive methods of service:

> Article 1 defines the scope of the Convention, which is the subject of
> controversy in this case. It says: "The present Convention shall apply
> in all cases, in civil or commercial matters, where there is occasion to
> transmit a judicial or extrajudicial document for service abroad." ...
> This language is mandatory, as we acknowledged last Term in *Société*
> *Nationale Industrielle Aérospatiale v. United States District Court*,
> 482 U.S. 522, 534, n. 15 . . . (1987).... Schlunk does not purport to

---

[2] The Hague Convention and India's formal reservations described below are attached as Exhibit
2.

> have served his on VWAG in accordance with the Convention. Therefore, if service of process in this case falls within Article 1 of the Convention, the trial court should have granted VWAG's motion to quash.

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). *See also id.* at 706

("Those who eschew its procedures risk discovering that the forum's internal law required

transmittal of documents for service abroad, and that the Convention therefore provided the

exclusive means of valid service.").

In *Société Nationale*, the Court contrasted the mandatory language of the Hague

Convention with that of the Hague Convention on Taking Evidence Abroad in Civil or

Commercial Matters and concluded that the latter was neither exclusive nor mandatory:

> As noted, *supra*, at 7, **the Service Convention** was drafted before the Evidence Convention, and its language **provided a model exclusivity provision** that the drafters of the Evidence Convention could easily have followed had they been so inclined. Given this background, the drafters' election to use permissive language instead is strong evidence of their intent.

482 U.S. at 533-34 (emphasis added).

The D. Mass Court has similarly held that service abroad in signatory states must comply

with the treaty. *See, e.g., Tabb v. Journey Freight Internations*, 584 F. Supp. 2d 334, 340 (D.

Mass. 2008) ("It is undisputed that … to make effective service in a country that has joined the

Hague Convention, a plaintiff must follow the provisions of the treaty.")(internal quotation

omitted).

Similarly, in *Marcantonio v. Primorsk Shipping Corp.*, 206 F.Supp.2d 54 (D. Mass. 2002),

the court vacated a default judgment where the plaintiff personally delivered the complaint to the

ship's captain and the company's counsel. The court held that Rule 4(f)(1) required service under

the Hague Convention and rejected the view that Rule 4(f)(2)(C)(i) authorized personal service.

206 F. Supp. 2d at 57-58 (quoting Advisory Committee Notes to 1993 Amendments to Rule 4(f)).

The court refused to order alternate service under Rule 4(f)(3):

> Nor is Marcantonio's alternative proposal, that this Court should ratify his attempt to serve Primorsk by mailing process to Primorsk's attorneys, convincing. …The Advisory Committee Notes on the provision state:

> Paragraph (3) authorizes the court to approve other methods of service not prohibited by international agreements. The Hague Convention, for example, authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances.... [Under some circumstances], the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement.

*Id.* at 58. The court held that, absent such urgency, Rule 4(f)(3) was inapplicable. *Id.* at 58-59.

Sadis & Goldberg and Douglas Hirsch did not comply with the Hague Convention by not serving Mr. Banerjee at his correct address and instead serving his mother at her address. Also, it needs to be pointed out as per **Exhibit F**, that the documents that must have been served to Dr. Reba Banerjee, due to the date stamp of December 2013 from the Central Authority was case no 13-cv-7355 (cased filed in Oct 2013) (which was dismissed without prejudice) and not Case no. 14-cv-913 (current case filed on 2/13/2014). Plaintiff says they mailed current case to Central Authority in March (process takes six to nine months in India) but explains that that proper service would take time—which is no justification at all and moved to Court for Service under Fed. Rule 4(f) (3). *See Furukawa Elec. Co. v. Yangtze Optical Fibre & Cable Co.*, 2005 WL 3071244 (D. Mass. 2005) (that Hague Convention service may be "burdensome and expensive" does not excuse compliance). Plaintiff has not suggested that its claims were so urgent that "convention methods will not permit service within the time required by the circumstances." In fact, the Plaintiff has waited five (5) years to file this lawsuit, and hence cannot make a case for urgency.

In view of Plaintiffs failure to serve Mr. Banerjee under the Hague Convention, Mr. Banerjee submits that the Court erred as a matter of law by ordering Plaintiff to serve via "electronic mail." (Order of July 2014.)

### 3. Even If Rule 4(f)(3) Applied, Neither Email Nor FedEx Are Permissible Methods of Service Under Rule 4(f)(3).

Even if the Hague Convention did not preempt Rule 4(f)(3), neither electronic mail nor service via Fedex were permitted because both are "prohibited by international agreement." Specifically, India has registered an objection to Article 10(a) of the Hague Convention, which permits "sending" judicial documents via postal channels provided that the receiving state does not object. *See* Exh. A ("India is opposed to the methods of service provided in Article 10.").[3] Service via DHL is within the scope of Article 10(a) and is also prohibited. Compare *Mones v. Commercial Bank of Kuwait, S.A.K.*, 502 F. Supp. 2d 363, 370-71 (S.D.N.Y. 2007) (DHL service prohibited where signatory objected to Art. 10), and *RSM Prod. Corp. v. Fridman*, 2007 WL 1515068, at *2 (S.D.N.Y. May 24, 2007) (same, for FedEx), *with EOI Corp. v. Med. Mktg. Ltd.*, 172 F.R.D. 133, 143 (D.N.J. 1997) (DHL is permitted service by mail where signatory has not objected), *and R. Griggs Group Ltd. V. Filanto Spa*, 920 F. Supp. 1100, 1103 (D. Nev. 1996)(same, for FedEx). *Cf. Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 384 (5th Cir. 2002) (Art. 10 did not permit service of process by mail at all); *Intelsat Corp. v. Multivision TV LLC*, 2010 WL 3368655, at *7 (S.D. Fla. Aug. 24, 2010) (same).[4] The Court has allowed service by

---

[3] Available at: http://hcch.e-vision.nl/index_en.php?act=status.comment&csid=984&disp=resdn.

[4] Whether Art. 10 even authorizes service of process through the mail as opposed to merely "sending" non-process documents is unclear, but the only authority in this District holds that it does not. *See Golub v. Isuzu Motors*, 924 F. Supp. 324, 327 (D. Mass. 1996) (noting split of authority but holding service of process by mail not authorized). *See also Nuovo Pignone, supra,*; *Bankston v. Toyota Motor Corp.*, 889 F.2d 172, 174 (8th Cir. 1989) (service by registered mail not permitted); *Cooper v. Makita, U.S.A., Inc.*, 117 F.R.D. 16, 17 (D. Me. 1987) (same).

email pursuant to Article 10 of the Hague Convention (that it specifically does not address email) and FRCP 4(f)(3). However, the Hague Convention is exclusive and compliance with the Hague Convention is mandatory in all cases that it applies to. That is, so long as the party to be served is located in a member state and no exception applies (e.g., Article 1 provides an exception where the address of the party to be served in not known), service of judicial and extrajudicial documents must be effectuated by means authorized under the Convention. Second, no provision under the Articles of the Hague Convention authorizes service by email. In other words, the Court erred (probably due to the address issue) to find the Convention doesn't prohibit service by email, so it must be allowed under Article 10. Instead, service by such means is proper only if the Convention expressly permits it, and the only provision that might be seen as permitting such service is Article 10, which refers to "postal channels" (please bear in mind that the Convention was drafted in 1965 and was never amended, so it's no surprise it doesn't expressly refer to electronic mail), but India has formally objected to service under Article 10 in its entirety. Furthermore, Article 14 of the *Universal Postal Convention* defines "electronic mail" as "a postal service involving the electronic transmission of messages". This would fall under the "postal channel" that India has objected to in its entirety. Under Fed. R.Civ.P.4(f)3, Courts can authorize service of process by email in particular cases as long as international agreement does not forbid it. In *Agha vs Jacobs* (N.D. Cal 2008) service by email is inconsistent with the Hague Convention. As discussed above, since India has objected to Article 10 in its entirety, the Court should not be able to take personal jurisdiction over Mr. Banerjee in this case via improper email service. Absent service of process, the judgment is void and must be vacated under Rule 60(b) (4).

### B. The Default Judgment Is Void under Article 15 Of The Hague Convention.

In addition, Mr. Banerjee respectfully submits that the Default Judgment itself violates the Hague Convention, rendering it void. Article 15 strictly limits the availability of default

judgments. The first paragraph of Article 15 provides that a default judgment "shall not be given until it is established that" either (a) the document was served "by a method prescribed by the internal law" of the recipient state for service in domestic actions (as specified in Article 5(a) of the treaty), or (b) that the document was actually delivered "by another method provided for by this Convention." (Hague Convention, Art. 15(a) – (b).) Both sections require service through a method specified by the treaty – either service by the Central Authority itself in a manner prescribed by that country's internal law as specified in Article 5(a), or by "another method" specified in the treaty (*e.g.*, voluntarily via diplomatic/consular agents (Art. 8), using diplomatic/consular channels to forward complaint to Indian authorities (Art. 9), or Art. 10, if the recipient state does not object – as India has).[5] Neither of these applies as Mr. Banerjee was never served at his residence and the Plaintiff merely sent the documents to the Indian central Authority in March 2014 and moved the Court in June 2014 (less than three months later) to serve Mr. Banerjee via email under FRCP 4(f)(3) in clear violation of Article 15 (Exhibit 2).

The second paragraph of Article 15 provides an "escape hatch" in case the pertinent Central Authority fails to serve the document, but only if *each* of three conditions are fulfilled:

> a) the document was transmitted by one of the methods provided for in this Convention,
>
> b) <u>a period of time of not less than six months</u>, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

---

[5] There is little authority interpreting Article 15, which might be read as permitting a default judgment if the complaint is served in a manner prescribed by the internal law of the recipient country for domestic litigation, even if not done by that country's Central Authority under Art. 5(a). Such an interpretation is implausible and would undermine the treaty by permitting default judgments where a plaintiff made no effort to comply but instead took it upon itself to serve the defendant as if it were being served in domestic litigation. Rather, section (a) of the first paragraph of Art. 15 must be read in conjunction with Art. 5(a), consistent with the reference in the next section to "another method" specified by the treaty.

c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

(Hague Convention, Art. 15, 2d ¶.) This paragraph plainly does not apply in this matter.

First, Plaintiff stated that Indian Central Authority served Mr. Banerjee's mother (with court documents in January 2014 which had to be the 13-cv-7355 case) and then Plaintiff supposedly mailed the documents in March 2014 to the Indian Central Authority to serve Mr. Banerjee through the Hague Service Convention, a process known to take up to nine months or more (after they were returned by Mr. Banerjees Mothers counsel ( see Exhibit G & H affidavit of Dr. Reba Banerjee and Mr. Kundu, Dr. Banerjee's counsel)). Plaintiff then moved the Court to serve by alternate means via email in June 2014 without waiting for six months as required by Article 15. Plaintiff has not asserted that they routinely followed up and "exhausted all reasonable means" on the Complaint to the Indian Central Authority under the treaty, and it has produced no evidence to support such a conclusion. Notably, the Plaintiffs' Affidavits in Support of the Request for Entry of Default does not mention that Mr. Banerjee was ever served by the Central Authority as required by the Hague Convention. Furthermore, Ms. Stamatelos, email to the Central Authority in Exhibit I shows that they had not been able to service Banerjee as required by the Hague Convention.

Second, absent evidence that the Plaintiff transmitted the Complaint under the treaty and of the date it purportedly did so (March 2014), the Court may not find that not less than six months has elapsed prior to moving for FRCP 4(f) (3).

Third, Plaintiff has not asserted that it made any effort at all to obtain the required proof of delivery, let alone that it made "every reasonable effort." In *Universal Trading & Inv. Co. v. Kiritchenko*, 2007 WL 660083 (N.D. Cal. Feb. 28, 2007), the plaintiff attested that he transmitted the complaint to the Antiguan Central Authority on August 2, 2000, and had "made various efforts

to obtain the Certificates." The Court held that because he had not identified those "various efforts" beyond a single telephone call, the plaintiff had not expended "every reasonable effort" and therefore had not satisfied each requirement of Article 15. *Id.* at *3 - *4. In the current case, 14-cv-913, the Plaintiff has not asserted that they had made any effort, in fact, simply that that the process would take too long and so asked the Court to move that it was served because the Plaintiff had sent the documents to the Central Authority.

Accordingly, as Plaintiff has failed to satisfy any of the prerequisites to a default judgment under Article 15, the Hague Convention prohibited (and continues to prohibit) entry of the Default Judgment. It is, therefore, void and must be set aside under Rule 60(b)(4).

C. **The Court Should Vacate the Default Judgment Under Rule 60(b)(1) Because The Court Erred In Awarding Plaintiff the Amount of $383,448.90**

1. The Court incorrectly awarded Plaintiff Amount despite July 2008 Pledge Agreement which settles the invoice And The Court Was Required to Hold a Hearing ;

The Court was misled by Sadis' intentional omission of the clause within the July 2008 Agreement that allowed Banerjee to pledge his portion of the incentive fees to Hirsch as payment in full for the legal fees owed to the Plaintiff. Sadis & Goldberg and Hirsch intentionally omitted to advise the Court of the Pledge Agreement which essentially allows the Defendant to "zero out" the invoice balance by allowing the Plaintiff to foreclose on his converted GP interest into LP interest in the GDF Fund. This process was agreed upon in the Agreement with Mr. Banerjee's signature and despite the emails from Mr. Hirsch that he would be sending a foreclosure notice to foreclose on the LP Interest, he never did. Instead he chose to file his baseless and meritless lawsuit to recover his fees when the mechanism to do that has already been contractually agreed upon in

the July 2008 Agreement without any notice of the clauses of that Agreement that allowed Hirsch to foreclose.

2.     The Court May Correct Its Mistake Of Law Under Rule 60(b)(1).

Rule 60(b)(1) allows relief from a judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect." The First Circuit has held that, in the context of *non*-default judgments, Rule 60(b)(1) may not be used to correct a court's mistake of law. *Silk v. Sandoval*, 435 F.2d 1266, 1267-68 (1st Cir.1971). Other Courts of Appeal have held otherwise. *E.g.*, *United Airlines, Inc. v. Brien*, 488 F.3d 158, 175 (2d Cir. 2009); *Benson v. St. Joseph Regional Health Center*, 575 F.3d 542, 547 (5th Cir. 2009); *Pierce v. United Mine Workers of Am.*, 770 F.2d 449, 451 (6th Cir. 1985); *Parks v. U.S. Life & Credit Corp.*, 677 F.2d 838, 839 (11th Cir. 1982). More recently, however, the First Circuit has suggested that, in the case of default judgment damage awards, a court may correct its error under Rule 60(b)(1).

> If *Silk* is correct about the limited scope of Rule 60(b) and so are the courts that say that Rule 59(e) may not be used to challenge a default judgment, then a party in default would never be able, by motion in the district court, to bring to that court's attention an error of law in the default judgment. Of course, the party could appeal the judgment to the court of appeals, but it would be odd and inefficient to preclude the party in default from first seeking relief based on error of law from the district court. … That particular problem would be exacerbated if, as happened here, the defaulted party also failed to appear at the hearing on the amount of the default judgment. In such circumstances, the defaulting party could never get a hearing before the district court on its argument that the amount embodied in the default judgment is based on an error of law. That might make sense as a strong medicine to encourage parties not to default, but it also could lead to uncorrected basic legal errors.

*Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 189 (1st Cir. 2004).

Mr. Banerjee respectfully submits that, under *KPS*, the First Circuit will conclude that the failure to hold an evidentiary hearing was an abuse of discretion and will vacate and remand for a proper determination. As the *Venegas-Hernandez* court observed, this would be inefficient and

would deprive the Court of its ability to correct legal errors. If the Court does not vacate the Default Judgment as being void, Mr. Banerjee asks that it vacate under Rule 60(b)(1) and hold the Plaintiff to its burden of proving why they have not foreclosed on the collateral as set out in the July 2008 Pledge Agreement and "settles" the invoice. Of course, Hirsch was well aware that they would have to wait till the end of the partnership to collect the collateral (Incentive compensation) and "zero-out" the invoice.

### D. The Default Judgment Should Be Vacated Under Rule 60(b)(1) On The Basis Of Mr. Banerjee's Mistake, Inadvertence, Surprise, Or Excusable Neglect.

Whether or not the Court ultimately agrees with Mr. Banerjee's position on service of process and voidness, he was completely unaware of the lawsuit or the Default Judgement since he was never served the papers. His mother being served the old dismissed case papers by Central Authority mistakenly and his wife being served the old dismissed case papers does NOT constitute proper service. He was completely taken unaware and surprised when he found out recently about the Case 14-cv-913 in the Pacer System. He was NOT aware about his "old practically defunct" email being served since he has used it very sporadically since 2013 and it is filled with spam and junk. If the Court should disagree, Mr. Banerjee's failure to appear and defend was inadvertent, surprise, a good faith mistake, and due to excusable neglect, Rule 60 (b) (1). Additionally, Rule 60 (b)(2)(3) should also apply here since the Court was unaware of the Pledge Agreement in the July 2008 Agreement (new evidence) due to the misrepresentation and omission committed by Sadis & Goldberg and Hirsch upon the Court and Mr. Banerjee by intentionally NOT making the Court aware of the clause of the Pledge Agreement which "zeroes out" the Invoice of the Plaintiff through the mechanism agreed upon by BOTH parties in 2008. The July 2008 Agreement was drafted by Sadis. The Plaintiff has violated the July 2008 Agreement by filing this suit and has dealt in bad faith with Mr. Banerjee.

Courts addressing Rule 60(b) motions consider various factors: (i) timeliness; (ii) exceptional circumstances; and (iii) the absence of unfair prejudice to the other party. *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir. 1992). The moving party must provide "reason to believe that vacating the judgment will not be an empty exercise" by showing that it has a "potentially meritorious claim or defense." *Id.* at 21. The court "should assume the truth of fact-specific statements contained in a Rule 60(b)[] motion and determine whether these facts, as alleged, warrant relief." *Marderosian v. Shamshak*, 170 F.R.D. 335, 338 (D. Mass. 1997).

Mr. Banerjee's motion is clearly timely. Rule 60(c)(1) sets a one-year limit for motions under Rule 60(b)(1), but otherwise requires only that they be filed within a reasonable time. Mr. Banerjee is filing this Motion immediately after learning of the Default Judgment from a friend and this memorandum is being filed as soon as he could complete it. Due to extremely short time frame in which to file these motions, Mr. Banerjee was forced to defend his position on a *pro se* basis. Exceptional circumstances exist because Mr. Banerjee was seriously prejudiced by the Plaintiffs refusal to comply with the Hague Convention (for this case having simply mailed this case to the Central Authority and moved the Court to serve a "defunct email address" in less than three months). In view of his *pro se* status, his diligence in making his arguments, and the preference for resolving matters on the merits, it would be a serious miscarriage of justice to deprive Mr. Banerjee of his right to defend. *See, e.g., Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.").

Sadis & Goldberg, a big law firm (who never foreclosed on the Collateral agreed upon to settle the Invoice for 5 years from 2008-2013 when they initiated the first dismissed lawsuit 13-cv-7355) will suffer no "unfair prejudice" if the Default Judgment is vacated and the case proceeds along the ordinary course. Moreover, Sadis & Goldberg is responsible for any delay, as it has deliberately chosen to bypass the Hague Convention procedures for this Case 14-cv-913. The Supreme Court warned against precisely this in *Schlunk*, 486 U.S. at 706 ("Those who eschew its procedures risk discovering that the forum's internal law required transmittal of documents for service abroad, and that the Convention therefore provided the exclusive means of valid service.").

Furthermore, Mr. Banerjee has meritorious defenses. Mr. Banerjee and Sadis & Goldberg signed the Pledge Agreement (part of the July 2008 Agreement) where the Mr. Banerjee negotiated the mechanism to "zero out" the Invoice. As mentioned previously the July 2008 Agreement was drafted by Sadis. The Email conversation between Mr. Hirsch and Mr. Banerjee in April and October of 2009 further shows that Mr. Banerjee was following the July Agreement and Mr. Hirsch had told him " the collateral is mine now" and " I am on vacation now and will send the Foreclosure Agreement". Please also note the rest of the conversation "Exhibits, B & C)". Count I (Account Stated), Count II (Goods Sold and Delivered), Count III (Breach of Contract), Count IV (Unjust Enrichment) and Count V(Quantum Meruit) are all related to nonpayment of the Invoice. Mr. Banerjee maintains that the Pledge Agreement was structured with a mechanism to foreclose on the collateral in order to settle the invoice and as a result all the Counts are baseless and meritless. Mr. Banerjee is not in breach of any agreement. Mr. Hirsch and the Plaintiff never foreclosed on the collateral despite Exhibit A and could have gotten paid with the Collateral as agreed upon in the July Agreement and subsequently ratified in the email conversation in 2009 ( Exhibit B & C). Mr. Hirsch it seems was dealing in bad faith all the time due to his actions and has been needlessly

wasting the Courts time and money. Mr. Banerjee stands ready to litigate this baseless and meritless lawsuit with his meritorious defenses and is hopeful that the Court will allow him the opportunity to defend himself vigorously as he intends to do and counterclaim the Plaintiff as well.

## CONCLUSION

For the foregoing reasons, Mr. Banerjee requests that the Court: (i) vacate the Default Judgment; (ii) set aside the Entry of Default against him; and (iii) order Sadis & Goldberg LLC to promptly serve the Complaint (in this case) in accordance with the Hague Convention or have its Complaint dismissed for lack of service or Order a Status Conference where Mr. Banerjee could participate via telephone.

DATED: April 26, 2016

Respectfully Submitted,
SUMANTA BANERJEE
*pro se*
58/1 Ballygunje Cir Road
Kolkata-700019
West Bengal
India
*Email: zbacllc@gmail.com*