# EXHIBIT 18

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - -x

SADIS & GOLDBERG, LLP,

                 Plaintiff,

   vs.

SUMANTA BANERJEE,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - -x

            CONFIDENTIAL

     Oral deposition of AKSHITA BANERJEE, taken pursuant to Notice, was held at the Law Offices of SADIS & GOLDBERG, LLP, 551 Fifth Avenue, New York, New York, commencing March 29, 2019, 10:03 a.m., on the above date, before Amanda McCredo, a Court Reporter and Notary Public in the State of New York.

Joint Exhibit
**087**
14-cv-00913(LTS)(OTW)

## Page 2

APPEARANCES:

SADIS & GOLDBERG, LLP
551 Fifth Avenue - 21st Floor
New York, New York 10176
BY: BENJAMIN HUTMAN, ESQ.
bhutman@sadis.com
(212)573-6675
Attorneys for Plaintiff


FERBER CHAN ESSNER & COLLERT, LLP
One Grand Central Place
60 East 42nd Street - Suite 2050
New York, New York 10176
BY: ROBERT N. CHAN, ESQ.
chan@ferberchan.com
(212)944-2200
Attorneys for Defendant


ALSO PRESENT:
Sumanta Banerjee

## Page 3

A. Banerjee

AKSHITA BANERJEE, the witness herein, after having
been first duly sworn by a Notary Public
of the State of New York, was examined and
testified as follows:

EXAMINATION BY
MR. HUTMAN:

Q   Good morning, Ms. Banerjee.  How are you?
A   Hi.  Good, thank you.
Q   Is this the first deposition you've ever taken?
A   Yes.
Q   So I'm just going to go over some very basic deposition rules just in advance.  I'm going to ask questions and you're going to answer questions.  No one else in the room, other than you, can be answering the questions.  Please wait for me to finish the question in its entirety before you answer, because if you answer in the middle, it makes the transcript difficult to read.  I'll do my best not to ask the next question until you finish your answer for the same reason.
        Don't use hand gestures or head gestures to give an answer.  Always say the answer verbally.  Once again, because nodding your head won't appear

## Page 4

A. Banerjee

in the transcript.
        At any time throughout the deposition, your attorney may objection.  He may say "Objection," "Objection to form."  You still have to answer the question even though he objects.  He will say his objection, but you answer unless he instructs you not to answer and he would do so verbally.
        If you need a break throughout the time that we're taking the deposition, as long as there isn't a pending question, I'll be glad to give you the break.  If you have -- if I ask a question and you say, "I need a break," answer the question and then we'll take the break.
        All right?
A   Thank you.
Q   How much time did you spend preparing for this deposition?
A   About an hour.
Q   Did you prepare with counsel?
A   Yes.
Q   Did you prepare at all without counsel?
A   Yes.
Q   Just combined together was about an hour?
A   Yes.

## Page 5

A. Banerjee

Q   Did you review any documents to prepare for this deposition?
A   I did look at the deposition that my husband gave.
Q   Did you look at anything else?
A   Yes, I looked at my affidavit.
Q   Anything else?
A   No.
Q   What's your educational background?
A   I have an MBA from NYU Stern and I have an undergraduate from College of Wooster.
Q   Where is that?
A   It's in Ohio.
Q   When did you live in Connecticut?
    MR. CHAN:  Objection.
A   We moved to Connecticut in 1994 for about a year period, and then moved into Connecticut formally in middle of '97.
Q   When did you leave Connecticut?
A   We moved to India in 2009 and returned back to Connecticut in 2012 -- 2011, excuse me.
Q   When in 2009 did you move to India?
A   January.
Q   Why did you go to India?

Page 126

1    A. Banerjee
2  108,000 from 2013?
3    A   I don't recall. I think so.
4    Q   Is it possible that you split the money?
5        MR. CHAN: Objection.
6    A   No, we did not split the money, but I don't
7  recall.
8    Q   Well, if you don't recall, how do you know
9  that you didn't split it?
10   A   Because there is nothing that we got in the
11 U.S. that he'd say, "This is mine and not yours,"
12 because that was the explicit understanding of our
13 agreement.
14   Q   But the agreement says you'll divide it
15 equitably?
16   A   It says that, but, at the same time, all
17 his money in India I couldn't touch, the same way he
18 can't touch what's in the U.S. He has assets in
19 India that far exceed anything that he has as a
20 joint or with me. So he said, "You can't touch
21 anything in India and I can't touch anything in the
22 U.S." And that's the agreement we made and we stick
23 to it even now.
24   Q   Are you saying there was an oral agreement
25 in addition to the written separation agreement?

Page 127

1    A. Banerjee
2    A   Yes.
3    Q   And that oral agreement, your understanding
4  is it's still in operation?
5    A   Yes, it is.
6    Q   So you guys still, today, even though
7  you're reconciled and together, keep your assets
8  separate?
9    A   Yes, we do. I have no access or ownership
10 interest in India. My house is my house. The 1514
11 Cook School Road is still my house.
12   Q   Do you currently have any joint account
13 with your husband?
14   A   Yes, we do now have a joint checking
15 account.
16   Q   And the money that goes into that account,
17 where does it come from?
18   A   My money that I get from what I do -- but
19 I'm looking for a job right now.
20   Q   You're sharing the U.S. assets; isn't that
21 correct?
22   A   This is post, post all the -- before
23 reconciliation.
24       This is after reconciliation.
25   Q   When you said earlier that your

Page 128

1    A. Banerjee
2  understanding is that the oral agreement still
3  stands, that wasn't quite accurate, right?
4        MR. CHAN: Objection.
5    A   It's accurate in the way I perceive it. So
6  the Indian assets are his. I don't ask him, I don't
7  know the total dollar. I know it's substantial. I
8  don't have any access to it and stuff.
9        And likewise, my big asset is my home.
10 It's my home. I own it with my father. I make the
11 payments on it.
12   Q   In terms of the everyday usage of cash,
13 that you do share now?
14   A   Yes, joint expenses. He gives me money for
15 the cash and I put in my money. We don't sit
16 say yours is five and mine is five. We put that
17 together and take care of it.
18   Q   This $431,000, did you report this as
19 income for the year 2014?
20   A   It wasn't mine, so, no, I did not report it
21 as income. It did not come in to me at that time.
22 It wasn't my name on the check.
23   Q   Did your husband report the $431 as income
24 in 2013?
25       MR. CHAN: Objection.

Page 129

1    A. Banerjee
2    A   No, we file separately.
3    Q   In your mind, is there any difference
4  between your ownership of the 108,000 in 2013 and
5  the 431,000 in 2014?
6        MR. CHAN: Objection.
7    A   I'm not sure I understand the question.
8    Q   I believe that you testified earlier that
9  the 108,000 you did report on your taxes in some
10 form. And you then said that, with respect to the
11 431,000, that you didn't earn it on your own so you
12 didn't report it. I'm asking what difference there
13 was between the 108,000 and the 431,000.
14       MR. CHAN: Objection.
15   A   We filed taxes separately for 2013 versus
16 2014.
17   Q   So the difference is that, the 431,000 was
18 your husband's income while the 108,000 was a joint
19 income with respect to taxes?
20   A   With respect to taxes, how I perceived it,
21 yes. So I would not have filed it into my taxes in
22 2014.
23       MR. HUTMAN: We'll mark this as Exhibit 51.
24       (State and Federal tax returns
25       for 2014 was marked as Exhibit